**JACOBS, Appellee,**

v.

**JACOBS, Appellant.**

[Cite as *Jacobs v. Jacobs* (1995), 102 Ohio App.3d 568.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 2911.

Decided April 19, 1995.

*Charles A. Kennedy,* for appellee.

*Craig R. Reynolds,* for appellant.

SLABY, Judge.

Appellant, Dechantel M. Jacobs, n.k.a. Stewart, appeals an order from the Wayne County Court of Common Pleas. The order adopted the report and recommendation of its referee that the visitation schedule, under which appellant and appellee, Gerald G. Jacobs, had conducted visitation of their son since their dissolution, be modified in accordance with the standard visitation order of the court. We reverse and remand for further proceedings.

Appellant and appellee were married on March 3, 1984. One child, Gerad, was born to them on August 13, 1984. On February 5, 1987, when Gerad was two and one-half years old, the parties ended their marriage by dissolution. Pursuant to the separation agreement, which was adopted by the court, appellant assumed custody of Gerad and appellee was granted visitation every other weekend from Friday evening until Sunday evening, every other legal holiday (including Gerad's birthday), and three or more weeks of the summer as agreed by the parties. Over the course of the next seven years, the parties abided by the visitation schedule except that instead of alternating holidays, they agreed to share them.

On April 11, 1994, appellee moved the court to modify and extend his visitation rights to accord with Loc.R. 14 of the Court of Common Pleas of Wayne County, which contains the court's standard visitation schedule. In addition to visitation on every other weekend, Loc.R. 14 provides for a Wednesday visitation from 5:30 p.m. until 7:30 p.m. (during the school year) or until 9:00 p.m. (during school vacation periods). The rule provides six weeks of visitation during the summer months, as compared with the three weeks allotted to appellee under the agreed visitation schedule. Whereas the parties shared holidays with Gerad, including his birthday, Loc.R. 14 requires parents to alternate holidays with the child and requires the child to spend his birthdays with the parent in whose home he happens to be on that date.

A hearing on the motion was held and the referee recommended that the standard visitation order be adopted. The trial court overruled objections filed by appellant and adopted the referee's report and recommendation.

Appellant appeals the trial court's order and assigns three errors. The assignments of error are interrelated; accordingly, we address them together.

### Assignments of Error

"[I.] The Trial Court erred as matter of law in modifying a prior decree regarding the parental rights and responsibilities when there was no evidence introduced to support the finding of a change of circumstances of the child or the residential parent."

"[II.] The Trial Court erred as a matter of law in modifying the prior decree regarding parental rights and responsibilities without making any finding pursuant to Section 3109.04(E)(1)(a) that such a modification was in the best interests of the parties' minor child."

"[III.] The Trial Court abused its discretion when it ordered a modification in the Appellee's visitation rights despite expert testimony that such a modification would have an adverse effect on the mental and physical health of the parties' minor child."

■ We must first determine the proper standard to be applied when a court is moved to modify a prior visitation order. Appellant argues that a visitation order cannot be modified unless the court finds, pursuant to R.C. 3109.04(E)(1)(a) and (F), both that a change of circumstances has occurred since the prior order was issued and that modification of visitation is in the best interests of the child. Appellee, citing *Appleby v. Appleby* (1986), 24 Ohio St.3d 39, 24 OBR 81, 492 N.E.2d 831, argues that R.C. 3109.04(E)(1)(a) and (F) do not apply to visitation orders. He further urges us to hold that imposition of a visitation schedule under Loc.R. 14(G) of the Wayne County Court of Common Pleas is *per se* "just and

reasonable" under R.C. 3109.051; therefore, according to appellee, we must affirm the decision below under an abuse of discretion standard of review. However, in consideration of the enactment of R.C. 3109.051 and the amendments to R.C. 3109.04 since the Supreme Court of Ohio decided *Appleby,* we conclude that *Appleby* is no longer controlling. We hold that, pursuant to R.C. 3109.04(E)(1)(a), a court cannot modify a prior decree that allocates parental rights and responsibilities for the care of a child, including parental rights to continuing contact with that child, unless it finds that a change in circumstances has occurred and that the modification is necessary to serve the best interest of the child.

Our decision rests upon statutory construction because the statutes involved do not expressly address modification of visitation orders. We recognize certain well settled rules that apply to statutory construction. In particular, the polestar of statutory interpretation is legislative intent to be determined from the words employed by the General Assembly as well as the purpose to be accomplished by the statute. *State v. Elam* (1994), 68 Ohio St.3d 585, 587, 629 N.E.2d 442, 444. Statutory words and phrases must be given their usual, normal or customary meaning unless they have acquired a technical or particular meaning by legislative definition or otherwise. *Morgan v. Ohio Adult Parole Auth.* (1994), 68 Ohio St.3d 344, 346, 626 N.E.2d 939, 941; *Klemas v. Flynn* (1993), 66 Ohio St.3d 249, 250, 611 N.E.2d 810, 811–812. Effect must be given to words utilized; a court cannot ignore words used nor add words not included to reach a desired result. *E. Ohio Gas Co. v. Limbach* (1991), 61 Ohio St.3d 363, 365, 575 N.E.2d 132, 133–134. Finally, it is the duty of any court, when construing a statute, to give effect to all pronouncements and to render the statute compatible and harmonious with other related enactments or amendments, if possible. *State ex rel. Mirlisena v. Hamilton Cty. Bd. of Elections* (1993), 67 Ohio St.3d 597, 599, 622 N.E.2d 329, 330–331.

*Appleby* was decided in 1986. At that time, R.C. 3109.04(A) addressed "to whom the care, custody, and control of the children shall be given." Section 1, Am.Sub.H.B. No. 93, 140 Ohio Laws, Part I, 1839, 1840–1841. Subsection (B)(1) of that statute provided that "the court shall not modify a prior *custody* decree" unless it finds a change in circumstances and that the modification is necessary to serve the best interest of the child. (Emphasis added.) *Id.* at 1843. R.C. 3109.05, which then controlled both support orders and visitation, stated in subsection (B) that "[t]he court may make any just and reasonable order or decree permitting any parent who is deprived of the care, custody, and control of the children to visit them at the time and under the conditions that the court directs." *Appleby,* 24 Ohio St.3d at 40, 24 OBR at 82, 492 N.E.2d at 833; see, also, Section 1, Am.Sub.H.B. No. 614, 140 Ohio Laws, Part II, 4213, 4223.

*Appleby* held that R.C. 3109.04 provides guidelines for modification of a prior custody decree, but not for visitation, which must be governed by R.C. 3109.05. *Appleby,* 24 Ohio St.3d at 40–41, 24 OBR at 81–83, 492 N.E.2d at 832–833. Since *Appleby* was decided, a number of courts have followed the decision and held that a change of circumstances is not a prerequisite to modification of visitation orders. See, *e.g., In re Thrush* (1988), 44 Ohio App.3d 40, 541 N.E.2d 119; *Lillo v. Lillo* (May 27, 1994), Huron App. No. H–93–036, unreported, 1994 WL 236215, at *4; *Chehayl v. Chehayl* (Apr. 28, 1994), Cuyahoga App. No. 65208, unreported, 1994 WL 163986, at *2; *McGuire v. George* (July 3, 1991), Gallia App. No. 90 CA 23, unreported, 1991 WL 122857, at *4. These courts do not appear to have undertaken an in-depth analysis of the changes in specific statutory language as it affects the *Appleby* holding.[1]

On May 31, 1990, R.C. 3109.051 was enacted specifically to allow grandparents and other relatives to have visitation rights and generally "to make other changes in the child visitation law." Title, Am.Sub.H.B. No. 15, 143 Ohio Laws, Part II, 1964. At the same time, the language in R.C. 3109.05(B) concerning visitation, which was quoted by *Appleby,* was deleted. Section 1, Am.Sub.H.B. No. 15, 143 Ohio Laws, Part II, at 1965. Subsection (A) of the newly enacted statute provided:

"(A) The court may make any just and reasonable order or decree permitting any parent who is deprived of the care, custody, and control of a child to visit the child at the time and under the conditions that the court directs; however, no such order or decree shall be made if the court determines that it would not be in the best interest of the child to permit that parent to visit the child." *Id.* at 1965–1966.

The first revision of R.C. 3109.051 was effective April 11, 1991. See Sections 1 and 6, Am.Sub.S.B. No. 3, 143 Ohio Laws, Part I, 53, 128 & 270. The portions of the statute relevant to this case have not been changed since that revision. R.C. 3109.051 now reads:

"(A) If a divorce, dissolution, legal separation, or annulment proceeding involves a child * * *, the court * * *, in accordance with division (C) of this section, shall make a just and reasonable order or decree permitting each parent

---

1. But, see, *Hardesty v. Hardesty* (Dec. 13, 1991), Geauga App. No. 90–G–1582, unreported, 1991 WL 268770, at *2 (R.C. 3109.051, effective April 11, 1991, "indicates that the statute * * * governs visitation and the modification of visitation rights"; but, "current legislation on visitation [does not] directly address[ ] modification of an original visitation order."); *Evans v. Evans* (July 27, 1994), Hamilton App. No. C–920914, unreported, 1994 WL 388692, at *5, fn. 1 (noting enactment of R.C. 3109.051, but concluding without discussion that the visitation order was not governed by R.C. 3109.04, but by R.C. 3109.051). See, also, *Harper v. Harper* (Sept. 27, 1993), Fayette App. No. CA93–04–012, unreported, 1993 WL 386293, at *3. These cursory discussions do not alter our conclusions in this case.

who is not the residential parent to visit the child at the time and under the conditions that the court directs, unless the court determines that it would not be in the best interest of the child * * *. The court shall include in its final decree a specific schedule of visitation for that parent.

   * * *

"(C) When determining whether to grant * * * visitation rights to a parent, * * * when establishing a specific visitation schedule, and when determining other visitation matters under this section * * *, the court shall consider * * * all other relevant factors, including, but not limited to, all of the factors listed in division (D) of this section. * * * "

It is our conclusion that R.C. 3109.051 does not apply to the modification of parental visitation rights; rather, the section applies only to the original establishment of parental visitation rights in a divorce, dissolution, legal separation or annulment proceeding and to the establishment and/or modification of "other person" visitation rights. First, when we review the statutory history in this area, we perceive a progressive restriction on the discretion of the court to decide parental visitation rights. The statute applicable to visitation under *Appleby*, R.C. 3109.05, was broadly worded to permit, but not require, a court to make any "just and reasonable" parental visitation order. *Appleby*, 24 Ohio St.3d at 40, 24 OBR at 81–82, 492 N.E.2d at 832–833, citing R.C. 3109.05(B). The enactment of R.C. 3109.051 again permitted the court to make a visitation order, but now limited those orders to situations in which the order would be "in the best interest of the child." Section 1, Am.Sub.H.B. No. 15, 143 Ohio Laws, Part II, 1964, 1965–1966. The amendment that was effective April 11, 1991, further restricted discretion by mandating, not merely permitting, the court to issue a visitation order and to include a specific schedule of visitation in its final decree. Section 1, Am.Sub.S.B. No. 3, 143 Ohio Laws, Part I, 53, 128–129. It also limited application of the statute to certain enumerated marital rights termination proceedings—"divorce, dissolution, legal separation, or annulment proceeding involv[ing] a child." *Id.* at 128. Underlying these changes was the increased awareness that, in the face of parental separation, a child generally benefits from "frequent and continuing contact" with both parents. See *id.* (R.C. 3109.051[A] ). Thus, while limiting the court's discretion, it was the apparent intention of the legislature to promote liberal visitation as long as the visitation furthers the particular child's best interest.

Subsection (B)(1) of R.C. 3109.051 confers discretion on a court to grant "other person" visitation rights in the context of the same marital rights' termination proceedings that are referenced in subsection (A). Significantly, the legislature expressly addresses, in subsection (B)(2), the right to file a motion for "other person" visitation both *"during"* those proceedings as well as if "not filed at that

time or [filed] at that time and the circumstances in the case have changed, at any time *after* a decree or final order is issued in the case." (Emphasis added.) The significance of the subsection is twofold: (1) there is a distinction expressed between the original proceedings, the marital rights termination proceedings, and subsequent motions for visitation; and (2) a change of circumstances is necessary before a subsequent motion for "other person" visitation may be filed. The legislature utilized R.C. 3109.051 to deal with both the initial determination of "other person" visitation rights as well as modifications. By comparison, it did not include a separate provision for modification of parental visitation orders. Instead, the statute deals only with the original proceedings and is silent on motions made subsequent to the final decree or order in the case.[2]

The omission does not appear to have been an oversight. At the same time that R.C. 3109.051(A) was amended to refer solely to marital rights termination actions, R.C. 3109.04(E)(1)(a), which previously addressed modification of "custody" decrees, was amended to cover modification of a "decree allocating parental rights and responsibilities for the care of children." Section 1, Am.Sub.S.B. No. 3, 143 Ohio Laws, Part I, 53, 119. Subsection (A)(1) was added to R.C. 3109.04 to provide that, in cases where there is no proposed parenting plan that is in the best interests of the child, the court shall designate a residential parent and also shall "divide between the parents the other rights and responsibilities for the care of the children, including * * * the right of the parent who is not the residential parent to have continuing contact with the children." *Id.* at 112 (R.C. 3109.04[A][1] ). Although this subsection is not directly applicable to this case, the language employed clearly indicates that a "decree allocating the rights and responsibilities for the care of the children" is broader than a "custody decree," as that term has been traditionally used,[3] and includes orders regarding visitation. R.C. 3109.04(E)(1)(a) now states, in pertinent part:

"The court shall not modify a prior decree *allocating parental rights and responsibilities for the care of children* unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child [or] his

---

2. We are cognizant that R.C. 3109.051(G)(1) provides for revision of a visitation schedule in conjunction with notification of a residential parent's intention to move to a new residence. This limited provision does not create any guidance for modification of visitation orders generally. Moreover, we note that a change in residence of the residential parent is a change of circumstances that might justify modification of a visitation order under R.C. 3109.04(E)(1)(a).

3. But, see, *Kolody v. Kolody* (1960), 110 Ohio App. 260, 262, 13 O.O.2d 25, 26, 169 N.E.2d 34, 35–36, in which we held that "custody" included "the sum total of all parental rights" in the context of a court's jurisdiction to determine support in a "custody only" proceeding.

residential parent * * *, and that the modification is necessary to serve the best interest of the child." (Emphasis added.)

By legislative definition, therefore, this subsection applies to the modification of prior orders regarding visitation. Whereas R.C. 3109.051 is silent on modification of parental visitation rights, R.C. 3109.04(E)(1)(a), so construed, supplies the omitted guidelines.

Our conclusion is bolstered by other language in R.C. 3109.051. The statute sets forth the procedure for and factors to be considered when determining whether to "grant" visitation rights, when "establishing" a visitation schedule, or when determining "other visitation matters under [R.C. 3109.051]." R.C. 3109.051(C) and (D). As noted above, parental visitation rights "under this section" are considered only in the context of "divorce, dissolution, legal separation, or annulment" proceedings—all original proceedings that concern the termination of marital rights. Proceedings to modify a prior visitation order are not proceedings that terminate marital rights. Moreover, utilization of such words as "grant" and "establish" ordinarily connote original determinations of entitlement, not subsequent revisions of rights already conferred.

The General Assembly has also shown that application of particular rules may apply beyond visitation matters decided "under the section," to matters which resolve "any issues related to the making of any determination with respect to visitation rights or the establishment of any specific visitation schedule." R.C. 3109.051(C). Had the legislature intended that R.C. 3109.051 apply to proceedings which determine parental rights other than those original proceedings enumerated in subsection (A), it could have employed the broader terminology that it used in subsection (C) with reference to interviewing a child in chambers.

Finally, application of R.C. 3109.04(E)(1)(a) and, in particular, the imposition of a change of circumstance prerequisite to modifications of parental visitation rights, further a number of important policy considerations. The Supreme Court of Ohio has recognized that continuity and stability are essential to the healthy development of a child. See *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 322, 574 N.E.2d 1055, 1058–1059. This is particularly true in the context of divorce when the child is forced to adjust to the separate living environments, rules, and routines of each parent. While liberal visitation rules foster the development of essential bonds between the child and the nonresidential parent, once a determination has been made that a specific visitation plan is in the best interest of a child, a rule that requires a change of circumstances before the plan can be modified appeases the need for permanency, continuity and stability in an otherwise volatile situation.

In addition, by imposing this requirement on modification of parental visitation rights, we render uniform the requirements applicable to modification of custody,

support and visitation orders—the principal areas of domestic relations law that affect children. Uniformity will hopefully nurture consistency in result. We note, as a practical matter, that some courts have already reached a similar result by imposing a burden of proof on the movant in a modification proceeding to show that the prior visitation order is no longer in the best interest of the child. See, *e.g., Bodine v. Bodine* (1988), 38 Ohio App.3d 173, 175, 528 N.E.2d 973, 975–976; *Harper v. Harper* (Sept. 27, 1993), Fayette App. No. CA93–04–012, unreported, 1993 WL 386293, at *3; *Vincent v. Hines* (May 25, 1990), Lake App. No. 89–L–14–114, unreported, 1990 WL 71022, at *2. This is another way of saying that something must have changed since the original visitation order to justify a change in the schedule. The courts, however, have not consistently invoked this judicially created rule. Recognition that a change of circumstances is a statutory prerequisite to modification of all orders allocating parental rights and responsibilities secures the courts' cooperation.

▉ Having concluded that R.C. 3109.04(E)(1)(a) governs modification of parental visitation orders, we look to the particular facts of this case, as demonstrated by the record, to determine whether the trial court erred in modifying the visitation schedule. Initially, we address appellee's contention that modification of a visitation order to comport with the local court's standard visitation order is *per se* "just and reasonable" and, therefore, the order must be affirmed under an abuse of discretion standard. While we agree that this court must apply an abuse of discretion standard, we cannot agree that imposition of the standard visitation order can never constitute an abuse of discretion.

▉ As appellee asserts, it is well settled that a trial court has considerable discretion to decide domestic relations issues, including visitation. *Appleby*, 24 Ohio St.3d at 41, 24 OBR at 82, 492 N.E.2d at 833; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218–219, 5 OBR 481, 481–483, 450 N.E.2d 1140, 1141–1142. The court in *Appleby* held that the discretion vested in the trial courts to decide visitation matters was broader than in other areas of domestic relations law. *Appleby*, 24 Ohio St.3d at 41, 24 OBR at 82–83, 492 N.E.2d at 833. Our construction of the amended statutes eliminates any such distinction. The discretion allotted requires only that the decision not be "unreasonable, arbitrary or unconscionable." *Blakemore*, 5 Ohio St.3d at 219, 5 OBR at 482, 450 N.E.2d at 1142.

Contrary to appellee's assertion, however, a *per se* rule is incompatible with statutory dictates. R.C. 3109.04(E)(1)(a), in pertinent part, states that the court cannot modify a prior decree unless there has been a change of the circumstances of the child or the residential parent and that modification is in the best interest of the child. Both determinations are factual questions. A change to a standard

visitation order may be warranted under the facts of some cases; nevertheless, as demonstrated by the facts in this case, that is not always so.

The referee in this case found that there was a change in circumstances sufficient to justify modification of the prior visitation schedule. The change in circumstances apparent from the record were the change in Gerad's age, from two and one-half to nine years old, appellee's desire to spend more time with his child, and a de facto modification of the prior holiday visitation schedule. While recognizing that the court had considerable discretion in adopting the referee's report and recommendation, we cannot agree that these facts were sufficient to justify modification of the order.

First, under R.C. 3109.04(E)(1)(a), a change in the nonresidential parent's circumstances is relevant only if the prior decree was a shared parenting decree. In this case, it was not. Second, a change in circumstances generally should not be predicated upon a change in the child's age. If this were a sufficient change of circumstances, then there would be no reason to impose this requirement—children always grow older. We do not opine that a change in age never supports modification; rather, it is properly considered as a relevant factor in the determination of the child's best interests. See R.C. 3109.051(D)(4) and (15).

Third, the parties' mutual agreement to change the prior visitation order does not justify imposition of an entirely different schedule. The record shows that the parties agreed to share holidays, including Gerad's birthday, rather than alternate these days. Imposition of the standard visitation order returned the parties to an arrangement, alternating holidays, that had proven unsatisfactory to them at the outset. It also entirely deprived one parent of time with Gerad on his birthday, contrary to the parties' agreement that birthdays be shared. The parties' agreement to modify a prior visitation schedule may be a sufficient change of circumstances to justify a court's modification of the schedule to conform with that agreement, provided it is in the best interest of the child. The agreement, however, should not be used as a change in circumstances that justifies discontinuation of the entire visitation schedule without reference to the parties' mutually demonstrated desires. The referee's decision in this case effectively penalized appellant for deviating from the prior schedule in order to facilitate visitation. We prefer to encourage the amicable resolution of parental disputes in visitation matters rather than penalize those who have made efforts to compromise.

Appellant's first assignment of error is well taken. The court abused its discretion when it modified the prior visitation order and imposed the standard

visitation order without evidence that there had been a sufficient change in circumstances as required by R.C. 3109.04(E)(1)(a).

We further conclude that the court erred by not making a determination that modification was in Gerad's best interest. R.C. 3109.04(F)(1) lists a number of factors which the court must consider when determining a child's "best interest." These include the wishes of the parents; the wishes of the child; the child's interaction and interrelationship with his parents, siblings, and others; the child's adjustment to home, school, and community; the physical and mental health of all persons involved; and each parent's facilitation of visitation. In the case at bar, the referee reviewed the testimony, but did not reach any conclusions about Gerad's best interest.

The referee interviewed Gerad, who expressed his opposition to a change in the visitation schedule. The only reason Gerad could verbalize was that he would miss his little sister. The referee was concerned that Gerad was echoing his mother's desires. He asked Gerad a number of questions that were aimed at evoking a response to confirm these concerns; Gerad continued to express the desire that the schedule remain the same regardless of his mother's wishes. R.C. 3109.04(F)(1)(b) requires the court to look at the wishes of the child "as expressed." Gerad's testimony indicated that he did not desire the changes.

We are also concerned that the referee adopted the standard order despite an express determination that imposition of Wednesday night visitation per the order was "unfair." The circumstances were such that, if midweek visitation were ordered, Gerad would be required to spend one and one-half hours in the car in order to spend an additional one-half hour of visitation per week with his father at his father's residence. The referee indicated that, if this proved unacceptable, the parties could always seek further modification. We cannot perceive how the availability of further recourse to the courts justifies the initial imposition of an unfair order.

Finally, we find error in the failure of the referee to consider the uncontroverted testimony of Gerad's treating psychologist in regard to his physical and mental health. As noted above, R.C. 3109.04(F)(1)(e) requires the referee to consider the physical and mental health of all of the persons involved. Gerad's psychologist testified that Gerad suffered from an adjustment disorder caused by stress; that, as is normal for a child his age, Gerad is more attached to and more comfortable with his mother; that he tends not to verbalize distress, but exhibit it behaviorally; and that he had problems with encopresis, a condition where a child has bowel accidents and which may be indicative of other problems. The referee discredited the psychologist's recommendation that "keeping the

current schedule would be in the child's best interest" because, again, he felt that Gerad's expressed desires only echoed his mother's desires:

"She indicates the child also told her that expanded visitation would mean he would miss his sister. He would also miss his mother. She testified the child told her that the schedule has worked for the past few years and he sees no reason to change it. Again, although [appellant] testified she has not specifically talked to the child regarding her objections, the child seems to be echoing his mother's words with regard to her objections."

At the outset, we note that the psychologist reported that Gerad had stated to her that he did not want changes in summer visitation because "that'd be longer than I ever went" and that he did not like the change in holiday schedules because "it's been the same a lot of years." Gerad did not employ the same words used by his mother. Instead, these statements to the psychologist were consistent with the concerns that Gerad expressed to the referee in his interview in chambers. Significantly, the statements do not contradict the psychologist's conclusions about Gerad's mental health. While we recognize that a court has considerable discretion to reject the recommendation of an expert, we find that the court abused its discretion in this case when it ignored the only evidence submitted on Gerad's mental health, a factor which the court is required, by statute, to consider. Compare *Frost v. Frost* (1992), 84 Ohio App.3d 699, 709, 618 N.E.2d 198, 204 (court may disregard expert recommendations) with *Moser v. Moser* (1982), 5 Ohio App.3d 193, 195, 5 OBR 427, 429–430, 450 N.E.2d 741, 742–743 (abuse of discretion to disregard uncontroverted testimony).

Appellant's second and third assignments of error are well taken. The trial court erred and abused its discretion in modifying the prior visitation order without making a determination that modification of the prior schedule was necessary to serve Gerad's best interest and without considering expert testimony concerning the child's mental health.

The trial court's judgment is reversed. We are aware that circumstances may have changed since the hearing in this case was conducted approximately ten months ago and since the trial court's judgment was entered eight months ago. Accordingly, we remand this case to the trial court for further proceedings and reconsideration in light of this opinion.

*Judgment reversed*
*and cause remanded.*

BAIRD, P.J., concurs.

QUILLIN, J., dissents.

581

QUILLIN, Judge, dissenting.

The trial court found that "there has been a change in circumstances to warrant a modification of the visitation schedule." I would defer to the trial court's judgment.