**WAGGONER, n.k.a. Selan, Appellant,**

v.

**WAGGONER, Appellee.**

[Cite as *Waggoner v. Waggoner* (1996), 111 Ohio App.3d 1.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 95CA0040.

Decided May 8, 1996.

*David A. Van Gaasbeek,* for appellant.

*Lon Vinion,* for appellee.

SLABY, Judge.

Cindy L. Waggoner, now known as Cindy L. Selan, appeals from the Wayne County Court of Common Pleas' denial of her motion to reallocate parental rights and responsibilities. We affirm.

Cindy and Kevin Waggoner's twelve-year marriage was dissolved in August 1989. The decree adopted the shared parenting plan submitted by the parties in which Cindy was named the residential parent of the three youngest children, Michelle, Amy and Victoria, and Kevin was named the residential parent of the three oldest children, Anita, Jessica, and Kevin, Jr. Contrary to the agreement, Cindy left the three youngest children with Kevin soon after the dissolution.

Kevin eventually moved for and, in January 1991, was granted temporary custody of all six children. In response, Cindy sought to reinstate the provisions of the original decree to permit the three youngest children to live with her. A home study was conducted, a guardian *ad litem* appointed, and a hearing was held. In August 1991, the court granted residential status to Kevin and ordered Cindy to pay child support in the amount of $5 per child per week.

In May 1992, Cindy moved to reallocate parental rights of all the children, but actually sought a change only for Anita, the oldest child. The court denied the motion. In March 1992, Kevin was forced to seek a court order to cause Cindy to return Jessica, the second oldest child, to his custody. Cindy concurrently filed a motion to have custody of Jessica granted to her because of alleged sexual abuse; finding no credible evidence of abuse, the court denied that motion. Although Cindy had not paid any child support to Kevin under the 1991 order, at about this time the court also denied a motion that Cindy be held in contempt because she had medical problems that prevented her from working.

Finally, in July 1994, Cindy again sought to obtain custody of all six children, but then limited her request to only the girls. Finding that there had been "no change of circumstances to warrant [Cindy's] request to modify," the referee reported and recommended that her motion be denied. The court agreed with the referee and, over Cindy's objections, adopted the report and recommendation in October 1994. It is from this last order that Cindy's appeal is taken. She raises two related assignments of error, which we address in reverse order, but consider together.

## Assignments of Error

"[II.] The trial court erred by placing a higher evidentary [sic] burden for the change of parental rights upon [Cindy] than required by statute in that it required [Cindy] to present evidence that showed that there was a substantial change of circumstances instead of just a change of circumstances."

"[I.] The trial court erred when it denied the motion of [Cindy] to change the residential parent's status from [Kevin] to [Cindy] and the trial court's reasoning for said denial is unreasonable, arbitrary, unconscionable, and manifestly against the weight of evidence."

Cindy contends that the referee impermissibly increased her burden of proof by requiring her to demonstrate a "substantial change of circumstances" rather than a "change of circumstances" under R.C. 3109.04(E)(1)(a). Further, she contends that the referee incorrectly applied the law by resting his decision on the absence of proof that Cindy's circumstances had changed. She argues that the referee ignored "key evidence" of changed circumstances. We find no merit in any of her arguments.

The standard of review to be applied by an appellate court on review of an order concerning modification of parental rights is "abuse of discretion." *Masters v. Masters* (1994), 69 Ohio St.3d 83, 85, 630 N.E.2d 665, 666. To overrule the trial court's decision, the court must have made " 'more than an error at law or judgment; [abuse of discretion] implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Id.*, quoting *Miller v. Miller* (1988), 37 Ohio St.3d 71, 73–74, 523 N.E.2d 846, 848–49. Thus, the discretion afforded the trial court must be given the "utmost respect"; we presume, unless the record shows otherwise, that the court's findings were correct. *Id.* at 74, 523 N.E.2d at 849.

Although extensive, the trial court's discretion in domestic proceedings is not unlimited, but must be employed within the confines of the relevant statutory law. *Id.* Modification of a custody decree is governed by R.C. 3109.04(E)(1)(a), which states:

"The court shall not modify a prior. decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree * * * that a change has occurred in the circumstances of the child, [or] his residential parent * * *, and that the modification is necessary to serve the best interest of the child.  In applying these standards, the court shall retain the residential parent designated by the prior decree * * *, unless a modification is in the best interest of the child and one of the following applies:

" * * *

" * * * The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

Pursuant to the statute, the court cannot order modification without evidence that a change in circumstances has occurred and that the child's best interest is served by the modification.  The change-in-circumstances requirement fosters continuity and stability in the child's life.  *Jacobs v. Jacobs* (1995), 102 Ohio App.3d 568, 576, 657 N.E.2d 580, 585–586.  It also serves the court's interest by discouraging relitigation of the same issues.  *Perz v. Perz* (1993), 85 Ohio App.3d 374, 376, 619 N.E.2d 1094, 1096.

■■■■ Unless modification is sought from a shared parenting order, the change in circumstances relates to the circumstances of the child or the residential parent.  *Clyborn v. Clyborn* (1994), 93 Ohio App.3d 192, 195, 638 N.E.2d 112, 114–15.  Moreover, the mere *possibility* of a change in the future will not ordinarily suffice to support modification.  See, generally, *Masters,* 69 Ohio St.3d at 86, 630 N.E.2d at 667.  Finally, in deciding whether the change in circumstances exists, the statute requires the court to weigh the harm against the advantages that would likely result from the change.  Implicit in this balancing test is the recognition that disruption in a child's regular residence and care is harmful; to balance that harm, a court must be able to justify the risk in part through the change-in-circumstances requirement.  Thus, the courts have described the extent of the change that must be shown as "significant," "substantial" and simply "sufficient" or "enough" to warrant modification.  See, *e.g., id.; Perz,* 85 Ohio App.3d at 376, 619 N.E.2d at 1096.  Irrespective of the terminology employed, the ultimate goal is the same:  to determine what is best for the child.  See *Miller,* 37 Ohio St.3d at 75, 523 N.E.2d at 849–850.

■■■ These considerations compel us to find that there was no abuse of discretion in the lower court's proceedings.  First, the referee imposed the burden on Cindy to show "a change of circumstances substantial enough to warrant this modification" and, finding "no change of circumstances to warrant her request to modify," concluded that she had failed to meet her burden of

proof. That language does not connote the imposition of an impermissibly heavy burden of proof.

Second, there is no indication that the referee "totally ignored" any evidence that Cindy presented to establish her case. As a reviewing court, we can assume that the trial court considered all competent, credible evidence in the record and also applied all relevant statutory requirements in reaching its decision. *Sayre v. Hoelzle–Sayre* (1994), 100 Ohio App.3d 203, 212, 653 N.E.2d 712, 718, citing *Whitmer v. Darrow* (Dec. 26, 1985), Summit App. No. 12130, unreported, 1985 WL 4735. Nevertheless, we address Cindy's evidence in the context of her "manifest weight" argument.

Cindy's "key evidence" was (1) the "intense" desire of her two oldest children to live with her; (2) the change in age of the children; (3) the "violent tendencies" of Kevin, Jr.; and, generally, (4) that Kevin is a bad person and parent. The record demonstrates that the court had much the same evidence before it two years earlier when custody was last decided. The oldest girls had indicated a desire to live with their mother, and Kevin Jr. had severe enough emotional problems to prompt the court to order Cindy to get Kevin some counseling.[1] Although Cindy relates specific incidents that she found offensive, those incidents were different, but not necessarily significant, manifestations of the same circumstances.

Additionally, Cindy's personal attack on Kevin's honesty and ability to parent included evidence that he was "walking into trouble with the Internal Revenue Service" because of alleged tax fraud, showed a child how to build an "Amish bomb,"[2] had church people come to help him clean the house, left the children with his mother to babysit them while he worked, failed to give proper medication, etc. Kevin returned the attack with evidence that Cindy did not comply with visitation and other orders of the court, had never paid child support, was trying to "buy" the children with trips to the mall, farmed off the kids to other people during her scheduled visitation, ignored doctors' instructions, etc. While their "evidence" may have shown the bitterness between the parties and that they could not work together for the benefit of their children, it did not demonstrate a change in circumstances. As seen in the history of the case and the evidence contained in the record, this situation has been ongoing since the parties first dissolved their marriage.

---

1. Cindy did not comply with that order, nor did she attend parenting classes as ordered by the court.

2. Kevin explained that he did not teach the child how to build the bomb—the child already knew—but that he was showing the child how dangerous the bomb could be.

█ Finally, we have previously decided that the change in a child's age is alone not dispositive of the right to modify a prior decree. See *Jacobs*, 102 Ohio App.3d at 578, 657 N.E.2d at 587. Although the children are now two years older than they were when Cindy last petitioned for custody, this change alone is insufficient to support modification of the custody order. In short, the record contained competent, credible evidence upon which the court, in its discretion, could appropriately deny the motion for change of custody.

Cindy's assignments of error are overruled. We affirm the judgment of the court of common pleas.

*Judgment affirmed.*

QUILLIN, P.J., and BAIRD, J., concur.