[Cite as *McClintock v. Gould* , 2013-Ohio-5117.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

REBEKAH MCCLINTOCK,               :        Case No. 12CA23
                                  :
    Plaintiff-Appellant,         :
                                  :
                                  :        DECISION AND
    v.                            :        JUDGMENT ENTRY
                                  :
ERIC F. GOULD,                    :
                                  :        **RELEASED: 11/6/13**
    Defendant-Appellee.          :
_____

APPEARANCES:[1]

Jason P. Smith, Proctorville, Ohio, for appellant.

Randall Lambert, Ironton, Ohio, for third-party petitioner-appellee Deborah Schrader.
_____

Harsha, J.[2]

{¶1}   Rebekah McClintock appeals the trial court's decision to grant Deborah Schrader, the paternal grandmother of two of McClintock's children, companionship rights.  McClintock contends the court could not consider the motion for companionship because Schrader waited to file her motion until after divorce proceedings between McClintock and the children's father ended, and circumstances in the case had not changed since the issuance of the divorce decree.  Schrader argues that McClintock misinterprets the statute at issue, and the change in circumstances provision does not apply to the companionship motion.

{¶2}   R.C. 3109.051(B)(2) is ambiguous because its language is susceptible to more than one reasonable interpretation.  Applying rules of statutory interpretation, we conclude the change in circumstances requirement in the statute does not apply if a

---

[1] Eric Gould has not entered an appearance or otherwise participated in this appeal.
[2] This case was reassigned to Judge Harsha on August 8, 2013.

non-parent files a R.C. 3109.051(B)(1) motion for visitation or companionship rights for the first time after a court issues a decree or final order in the divorce or other statutorily enumerated proceeding.  Therefore, the trial court could consider Schrader's motion on its merits.

{¶3}    Next, McClintock complains the court did not find companionship time was in the best interest of the children.  But this finding is implicit because the court considered the requisite statutory factors before it awarded Schrader companionship rights.  McClintock also argues the court could not find companionship time to be in the children's best interest because it goes against her wishes and the children did not have an "extraordinary" relationship with Schrader.  However, the court gave the requisite "special weight" to McClintock's desires but ultimately found the best interest of the children favored companionship and that interest outweighed her desires.  The court did not have to find Schrader had an "extraordinary" relationship with the children to reach this conclusion.  Moreover, the court took great pains to alleviate McClintock's primary concern that Schrader would talk to the children about their father's incarceration.  McClintock failed to demonstrate anything unreasonable, arbitrary, or unconscionable about the court's decision to award companionship time.

## I.  Facts

{¶4}    McClintock and Eric Gould married in 2004 and had two children together, R.G. and A.G.  In August 2008, McClintock filed a complaint for divorce because she believed Gould had engaged in sexual conduct with her then nine-year-old daughter from a previous marriage.  Gould pleaded guilty to two counts of gross sexual imposition and went to prison.  *See State v. Gould*, Lawrence C.P. No 08CR276 (Jan. 7,

2010).  The trial court issued a divorce decree on May 5, 2010, and the court designated McClintock as the "primary custodial and residential parent" of R.G. and A.G.  The court awarded Gould no visitation time as he was incarcerated and not scheduled for release until 2018.

{¶5}    On May 27, 2010, Schrader filed a Motion to Join Necessary Party and a Motion for Companionship Time.  In the companionship motion, she alleged that prior to Gould's arrest in August 2008, she had a good relationship with R.G. and A.G. and that it would be beneficial for her and the children to continue that relationship.  McClintock opposed the motions.  After a hearing, a magistrate issued a decision granting Schrader companionship time once a month with R.G. and A.G.  McClintock filed objections and the trial court remanded the matter for appointment of a guardian ad litem (GAL) to investigate and report to the court on the criteria in R.C. 3109.051.  The court also instructed the magistrate to enter findings of fact and conclusions of law that addressed "all the criteria set forth under O.R.C. 3109.051 specifically."

{¶6}    Subsequently, the GAL filed a report and recommended that Schrader receive companionship time.  The magistrate conducted another hearing, took additional evidence, and again issued a decision granting companionship time.  McClintock again filed objections.  She argued in part that Schrader did not "timely" file her companionship motion under R.C. 3109.051(B)(2) because Schrader filed the motion after the court issued the divorce decree and the circumstances in the case had not changed since then.  McClintock also claimed the magistrate did not afford special weight to her wishes.  The trial court noted that McClintock never paid for (and thus never filed) a transcript of the proceedings.  Therefore, the court accepted the

magistrate's findings of fact. Nonetheless, the court stated that it reviewed the "legal issues" raised by her objections and overruled them. The trial court granted Schrader supervised visitation with the children once a month, for two hours, at a public location near the children's residence. This appeal followed.

## II. Assignments of Error

**{¶7}** McClintock assigns the following errors for our review:

1. THE COURT BELOW ERRED IN ALLOWING THE PETITIONER-APPELLEE TO INTERVENE IN THIS CASE DUE TO THE FACT THAT HER PETITION WAS NOT TIMELY FILED IN ACCORDANCE WITH O.R.C. 3109.05(B)(2).

2. THE COURT BELOW ERRED IN ORDERING THAT THE PLAINTIFF-APPELLANT'S MINOR CHILDREN HAVE COMPANIONSHIP TIME WITH THE PETITIONER-APPELLEE WITHOUT MAKING A SPECIFIC FINDING THAT SUCH COMPANIONSHIP TIME WAS IN THE BEST INTEREST OF SAID CHILDREN AS REQUIRED BY O.R.C. 3109.051(B)(1)(c) AND WITHOUT A BASIS FOR SUCH A FINDING UPON CONSIDERATION OF THE FACTORS SET FORTH IN O.R.C. 3109.051(D).

## III. R.C. 3109.051(B)(2)'s Change in Circumstances Requirement Does Not Apply

**{¶8}** In her first assignment of error, McClintock contends the trial court erred when it allowed Schrader to "intervene" because the motion for companionship was "untimely" under R.C. 3109.05(B)(2). In reality McClintock argues that because Schrader filed her motion after the divorce proceedings ended, under R.C. 3109.051(B)(2) the court could not consider the motion as the circumstances in the case had not changed since the court issued the divorce decree. Schrader argues McClintock misinterprets the statute, and the change in circumstances requirement does not apply to her because this is her first companionship motion.

**{¶9}** R.C. 3109.051(B) states:

(1) In a divorce, dissolution of marriage, legal separation, annulment, or child support proceeding that involves a child, the court may grant reasonable companionship or visitation rights to any grandparent, any person related to the child by consanguinity or affinity, or any other person other than a parent, if all of the following apply:

(a) The grandparent, relative, or other person files a motion with the court seeking companionship or visitation rights.

(b) The court determines that the grandparent, relative, or other person has an interest in the welfare of the child.

(c) The court determines that the granting of the companionship or visitation rights is in the best interest of the child.

(2) A motion may be filed under division (B)(1) of this section during the pendency of the divorce, dissolution of marriage, legal separation, annulment, or child support proceeding *or, if a motion was not filed at that time or was filed at that time and the circumstances in the case have changed, at any time after a decree or final order is issued in the case.* (Emphasis added.)

**{¶10}** The parties have competing interpretations of the italicized portion of R.C. 3109.051(B)(2). Their dispute centers on statutory interpretation, which presents a legal issue we review de novo. *Denuit v. Ohio State Bd. of Pharmacy*, 2013-Ohio-2484, 994 N.E.2d 15 (4th Dist.), ¶ 30. "The primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute." *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 9. "If the meaning of a statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996). But if a statute is ambiguous, "further interpretation is necessary." *State v. Chappell*, 127 Ohio St.3d 376, 2010-Ohio–5991, 939 N.E.2d 1234, ¶ 16. A statute is ambiguous if its language is susceptible to more than one reasonable interpretation. *See State ex rel. Toledo Edison Co. v. Clyde*,

76 Ohio St.3d 508, 513, 668 N.E.2d 498 (1996).

{¶11}  The phrase "or, if a motion was not filed at that time or was filed at that time and the circumstances in the case have changed, at any time after a decree or final order is issued in the case" in R.C. 3109.051(B)(2) is ambiguous as it is susceptible to more than one reasonable interpretation.  As McClintock argues, the statute could reasonably be interpreted to mean that any time a non-parent files a companionship motion after the court issues a decree or final order in one of the enumerated proceedings, the motion cannot proceed unless the circumstances in the case have changed.  But as Schrader argues, the statute could also reasonably be interpreted to mean the change in circumstances requirement only applies to a post-decree or final order motion if the non-parent previously filed a motion during the proceedings (and the court presumably denied it).

{¶12}  Because the statute is ambiguous, we must interpret it.  R.C. 1.49 provides that if a statute is ambiguous, in determining the intention of the legislature, we "may consider among other matters:  (A) The object sought to be attained; (B) The circumstances under which the statute was enacted; (C) The legislative history; (D) The common law or former statutory provisions, including laws upon the same or similar subjects; (E) The consequences of a particular construction; (F) The administrative construction of the statute."  Under R.C. 1.42, we must read words and phrases in context and construe them according to the rules of grammar and common usage unless they have acquired a technical or particular meaning.  In addition, R.C. 1.47(B) provides that:  "In enacting a statute, it is presumed that * * * [t]he entire statute is intended to be effective[.]"  In other words, we must presume the legislature intended

that every word in a statute have some legal effect. *See State ex rel. McQueen v. Court of Common Pleas of Cuyahoga Cty.*, 135 Ohio St.3d 291, 2013-Ohio-65, 986 N.E.2d 925, ¶ 12, quoting *State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, ¶ 18 (" 'Venerable principles of statutory construction require that in construing statutes, we must give effect to every word and clause in the statute.' ")

{¶13}  McClintock cites a Supreme Court of Ohio case, *In re Gibson*, 61 Ohio St.3d 168, 573 N.E.2d 1074 (1991), for the proposition that:  "When a motion for non-parental visitation is filed under O.R.C. 3109.051 (B)(2) [sic], and is not filed during the pendency of the case, the statute contemplates the occurrence of a disruptive, precipitating event prior to the filing."  (Appellant's Br. 8).  *Gibson* does not stand for this proposition.  The *Gibson* Court never interpreted R.C. 3109.051(B)(2) or determined when the change in circumstances requirement applied.  In fact, the Court stated R.C. 3109.051 had no effect on the outcome of the case before it.  *Gibson* at 170.  Therefore, we find *Gibson* does not control our statutory analysis.

{¶14}  Much of the grammar in R.C. 3109.051(B)(2) is confusing, to say the least. First, the legislature wrote it using the passive voice, which frequently leads to ambiguity and uncertainty.  Second, the legislature's use of a complex sentence leaves the reader guessing as to the legislature's true intent.  The placement and structure of the subordinate clauses, combined with passive voice and comma placement relative to the use of conjunctions, results in hopeless confusion.

{¶15}  Accordingly, we resort primarily to the rule of construction that presumes there is no "surplusage" in the statutory language, i.e., all the words used have an

intended meaning. Doing so, we conclude the change in circumstances requirement only applies to those non-parents who actually filed unsuccessful motions for visitation or companionship during the pendency of the divorce or other proceeding.

{¶16} In order to give R.C. 3109.051(B)(2) a "plain language" interpretation and to ensure that all words in the statute have meaning, we interpret the statute to state that a non-parent may file a motion for visitation or companionship: (1) during the legal proceeding (divorce, dissolution, etc.), or (2) after a decree or final order is issued in the case if (a) the non-parent did not file such a motion during the proceeding, or (b) the non-parent did file such a motion during the proceeding and the circumstances in the case have changed subsequently. If we were to apply the clause "and the circumstances in the case have changed" to the "if a motion was not filed at [the time of the proceeding]" portion of the statute, the entire clause "if a motion was not filed at that time or was filed at that time" would be surplusage and could be eliminated from the statute. This is true because the clause would state that if one thing happens or its opposite happens, one must still have a change in circumstances. Similar to a double negative, that language would in effect cancel itself out. If the legislature had intended for the change in circumstances requirement to apply to all post-decree motions, it simply could have said that the motion may be filed: (1) during the legal proceeding, or (2) after the decree or final order is issued if the circumstances in the case have changed. The only logical way to give both clauses – "not filed" and "filed" – meaning is to apply the change in circumstances language to the latter but not the former.

{¶17} We do not accept that our interpretation undermines the finality of cases and creates protracted litigation. In enacting the statute the legislature did clearly intend

to give non-parents the ability to re-open divorce and other proceedings on the limited issue of visitation and companionship rights.  The statute explicitly permits non-parents to file post-decree or final order motions for these rights.  All our decision does is determine when such a motion must meet the threshold change in circumstances requirement before the court proceeds to the remainder of the analysis, i.e., whether the non-parent has an interest in the welfare of the child and the granting of the companionship or visitation rights is in the best interest of the child.  Our interpretation simply permits non-parents who file a visitation or companionship motion for the first time post-decree to proceed even if the circumstances in the case have not changed.  The court must still determine that the non-parent has an interest in the child's welfare and that visitation or companionship is in the best interest of the child before the non-parent can obtain any visitation or companionship rights.  And although we are sensitive to the need to discourage protracted litigation, we do not view our decision as encouraging that result.  Domestic relations cases are often protracted by virtue of their very nature, as well as the conduct of the parties and counsel.

{¶18}  The lack of a comma between the clause "was not filed at that time" and the clause "or was filed at that time and the circumstances in the case have changed" does not give us reason to suppose the absence is intentional.  We are not aware of any authority for the proposition that in interpreting a statute, we must presume the *absence* of punctuation is intentional and has meaning.  As we already explained, our interpretation of R.C. 3109.051(B)(2) comports with the rule of construction that requires us to give legal effect to all the words actually used in a statute.  To interpret the statute otherwise would give effect to what the legislature did not put in the statute instead of

what it did.

## IV. The Best Interest of the Children

{¶19} In her second assignment of error, McClintock initially contends that the court erred because in its final judgment entry, it did not make a finding that companionship rights were in the best interest of the children. Again, R.C. 3109.051(B)(1) states that before a court may grant reasonable visitation or companionship rights to a non-parent, the court must among other things "determine[ ] that the granting of the companionship or visitation rights is in the best interest of the child." R.C. 3109.051(C) states that: "When determining whether * * * to grant companionship or visitation rights to a grandparent, relative, or other person pursuant to this section * * *, the court * * * shall consider * * * all of the factors listed in division (D) of this section." R.C. 3109.051(D) sets forth 16 factors.

{¶20} We agree the trial court failed to make an explicit finding in its September 10, 2012 judgment entry that granting Schrader companionship rights was in the best interest of the children. However, although R.C. 3109.051(B)(1) requires that the court "determine[ ]" such rights are in the children's best interest, the statute does not require that the determination be in the form of an explicit finding. Obviously, it would be preferable for courts to explicitly make their best interest finding. However, in this case the trial court noted that non-parent visitation statutes allowed it to consider "the best interest of the child and balance[ ] that interest against the parent's desires." The court explicitly made findings on all of the relevant R.C. 3109.051(D) factors. Then the court granted Schrader companionship time "after balancing the * * * factors, and giving the parental wishes special weight * * *." The court's "best interest" finding is implicit in this

decision.  Therefore, we reject McClintock's argument.  *See Brammer v. Brammer*, 5th Dist. Delaware No. 05 CAF 05 0028, 2006-Ohio-3318, ¶ 20-26 (rejecting argument that court erred when it awarded visitation to a non-parent under R.C. 3109.051(B)(1) without first finding visitation rights were in the children's best interest because such a finding was implicit in the court's decision).

**{¶21}**  Next, McClintock contends a review of the evidence on the R.C. 3109.051(D) factors does not support the court's finding that companionship time was in the children's best interest.  "The trial court has broad discretion as to visitation issues, and its decision will not be reversed absent an abuse of discretion, i.e., the decision is unreasonable, arbitrary or unconscionable."  *In re S.K.G.*, 12th Dist. Clermont No. CA2008-11-105, 2009-Ohio-4673, ¶ 21.

**{¶22}**  The crux of McClintock's argument is that the court had to give "special weight" to her desire for Schrader to not have companionship rights based on the United States Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).  McClintock argues that as the parent, her wishes must prevail unless there is something "extraordinary" about the relationship between Schrader and the children, and there is not.

**{¶23}**  In *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 11, quoting *Troxel* at 70, the Supreme Court of Ohio explained that a plurality of the *Troxel* court "stated that if a fit parent's decision regarding nonparental visitation becomes subject to judicial review, 'the court must accord *at least some special weight* to the parent's own determination.' " (Emphasis sic.).  The Supreme Court of Ohio adopted the plurality view and found that "Ohio courts are obligated to afford some

special weight to the wishes of parents of minor children when considering petitions for nonparental visitation made pursuant to R.C. 3109.11 or 3109.12." *Harrold* at ¶ 12. The *Harrold* Court did not address motions for non-parental visitation and companionship rights under R.C. 3109.051(B). However, we believe the "special weight" rule would also apply to those motions.

**{¶24}** The *Harrold* court analyzed the R.C. 3109.051(D) factors in relationship to the "special weight" rule. The court found that "special weight is required by R.C. 3109.051(D)(15), since the statute explicitly identifies the parents' wishes regarding the requested visitation or companionship as a factor that must be considered when making [a] 'best interest of the child' evaluation." *Id.* at ¶ 43. The court explained that this requirement "is not minimized simply because Ohio has chosen to enumerate 15 other factors that must be considered by the trial court in determining a child's best interest in the visitation context. Ohio's nonparental-visitation statutes not only allow the trial court to afford parental decisions the requisite special weight, but they also allow the court to take into consideration the best interest of the child and balance that interest against the parent's desires." *Id.*

**{¶25}** However, there is no requirement that a non-parent have an "extraordinary" relationship with a child to obtain companionship or visitation rights under R.C. 3109.051(B) against the parents' wishes. And it is clear that the trial court afforded McClintock's wishes the requisite special weight. But ultimately, the court implicitly concluded that granting Schrader companionship rights was in the best interest of the children and that interest outweighed McClintock's desires.

**{¶26}** In its judgment entry, the trial court explicitly stated that it was "well aware

that a parent's wishes are to be afforded 'special weight.' "  The court noted that the

"primary objection" McClintock had to companionship time was that Schrader would

discuss her son's incarceration and the facts of the case with the children.  On appeal,

McClintock again emphasizes this objection to companionship time.  McClintock also

states that she objects to companionship time because Schrader made a "conscious

choice" to fund Gould's legal defense.   (Appellant's Br. 13).  The court did not mention

this reason in its entry.

{¶27}  However, the court did find that all the parties agreed Gould's

incarceration should not be discussed with the children.  The court specifically ordered

Schrader not to "talk about, or engage in any discussion in regards to her son, Eric

Gould, and shall not discuss any of the circumstances surrounding his incarceration."

The court also stated that McClintock or her representative could be present at the

companionship times.  Thus, it is clear the court took great pains to alleviate

McClintock's concern about the children's exposure to information about their father.

{¶28}  McClintock also objected to companionship rights because of Schrader's

lack of contact with her and her children after Gould's criminal prosecution began.  The

court acknowledged Schrader had not seen the children for approximately 27 months

prior to the initial hearing.  But the court noted there was conflicting testimony about the

reason for this – Schrader claimed she did attempt to contact McClintock, but

McClintock described Schrader's efforts as "lax."  However, according to the court even

McClintock agreed Schrader had a "good relationship" with the children that "continued

shortly after Mr. Gould was charged with GSI."  And McClintock agreed it was a "normal

grandparent relationship" taking into consideration the distance between McClintock's

and Schrader's homes.  McClintock has not demonstrated that the court's implicit decision that it was in the children's best interest to rekindle that good relationship by way of two hours of visitation per month, which she or her representative can supervise, was unreasonable, arbitrary or unconscionable.  Accordingly, we overrule the second assignment of error.

## V.  Conclusion

{¶29}  Having overruled both assignments of error, we affirm the judgment below.

JUDGMENT AFFIRMED.

Hoover, J., dissenting:

{¶30} I respectfully dissent from the principal opinion on assignment of error I; and therefore, I would reverse the judgment of the trial court. I agree that R.C. 3109.051(B) is ambiguous; however, I would conclude that the change in circumstances requirement does apply when a non-parent files a R.C. 3109.051(B)(1) motion for visitation or companionship rights for the first time after a court issues a decree or final order in the divorce or other statutorily enumerated proceeding.

{¶31} The primary goal of statutory interpretation, as set forth by the principal opinion, is to give effect to the legislature's intent. We do this by considering, among other matters, the circumstances under which the statute was enacted, the legislative history, and the consequences of a particular construction. *See* R.C. 1.49. R.C. 3109.051 was enacted by the legislature on May 31, 1990, "to specifically permit grandparents and other relatives to receive reasonable companionship or visitation rights with respect to certain types of children." *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 326, 574 N.E.2d 1055 (1991), fn. 5; *see also Jacobs v. Jacobs*, 102 Ohio App.3d 568, 573, 657 N.E.2d 580 (9th Dist.1995), *abrogated on other grounds*, ("On May 31, 1990, R.C. 3109.051 was enacted specifically to allow grandparents and other relatives to have visitation rights and generally 'to make other changes in the child visitation law.' Title, Am.Sub.H.B. No. 15, 143 Ohio Laws, Part II, 1964."). The key word mentioned above is "reasonable." The legislature apparently wanted to give grandparents and other relatives an avenue to obtain reasonable companionship or visitation rights.

**{¶32}** Under R.C. 1.42, we must read words and phrases in context and construe them according to the rules of grammar and common usage. Here, had the legislature intended the change of circumstances language to apply only when a motion had been filed during the pendency of the divorce, and not when a motion had not been previously filed, the legislators simply could have inserted a comma between the clause "was not filed at that time" and the clause "or was filed at that time and the circumstances in the case have changed." However, no such comma exists in the statutory language; and in interpreting the statute, the court should suppose the absence is intentional. Thus, I believe Ms. McClintock's interpretation of the statute more closely resembles the intention of the legislature; and I would conclude that a non-parent must prove a change in circumstances if he or she is filing a motion for visitation or companionship pursuant to R.C. 3109.051(B)(1) for the first time after a court issues a decree or final order in the divorce or other statutorily enumerated proceeding.

**{¶33}** In addition, finality of cases may be undermined by the principal opinion's interpretation of the statute. The principal opinion's interpretation allows a non-parent to file a request for companionship rights at any time so long as he or she has never filed a pleading before and has been denied. For the parties, the children, and the courts, when a non-parent is permitted to file at any time without proof of a change in circumstances, litigation may be protracted as it was in this case.

**{¶34}** In this case, the trial court proceedings lasted for approximately four years. The divorce was filed in August 2008. It took one year and nine months to finalize the divorce, which occurred on May 5, 2010. Before the month was over, on May 27, 2010, Schrader then filed her Motion for Companionship Time. This motion

was not decided until September 2012.  No evidence of a change in circumstances between May 5, 2010 and May 27, 2010 was presented.  Schrader could easily have filed her motion for companionship while the divorce case was pending.  Instead, she waited twenty-two days after the divorce was final to file her motion for companionship.

{¶35}  When considering the sentence structure of the statute, it would appear that a change of circumstances should be proven.  In addition, I do not believe that protracted litigation is what the legislature sought when it enacted the statute.  Because appellee had failed to demonstrate a change in circumstances in support of her post divorce decree motion for companionship, I would sustain appellant's first assignment of error and reverse the decision of the trial court.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J.:  Concurs in Judgment Only.
Hoover, J.:  Dissents with Dissenting Opinion.

For the Court

BY: _____
     William H. Harsha, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**