Richard T. DEIVERT, Appellant,

v.

Pauline Deivert OSEIRA, Appellee.

No. 4910.

Supreme Court of Alaska.

May 22, 1981.

---

Teresa L. Foster, Cole & Downes, Fairbanks, for appellant.

Winston S. Burbank, Daniel Westerberg, Birch, Horton, Bittner, Monroe, Pestinger & Anderson, Fairbanks and Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and BRYNER, C. J., of the Court of Appeals.

BURKE, Justice.

May a trial court deny a motion to modify a child custody order without considering the grounds on which it is made and without holding a hearing? We conclude here that the court must consider the motion, but need not hold a hearing if it finds that proof of the grounds asserted for a change would not justify that action.

Appellee Pauline Deivert Oseira obtained a default divorce in 1973 from her then husband, Richard Deivert. She was given custody of the two daughters of the marriage, who are now nine and twelve years of age. Appellant was ordered to pay child support and was given reasonable rights of visitation. The parties lived together intermittently for the next three years and after their final separation in 1976 Oseira sought to recover past due child support.

The record does not show the disposition of the motion, but it appears that at least $2,400 in arrearages were eventually reduced to judgment. At the same time, Deivert was contending that his visitation rights were being frustrated by Oseira. In May, 1977, he moved to modify the decree to obtain joint custody and to reduce his child support obligation. The court held a brief hearing in June, at which the parties agreed to try to work things out between them and the court appointed a guardian ad litem for the children. A visitation schedule was later agreed upon. Another hearing was held August 31 and September 1. The record does not disclose the exact inquiry conducted at that time, but at its conclusion the court reduced support arrearages to judgment and ordered counseling and home studies. The court's opinion and order from which Deivert has taken this appeal asserts that the court also denied Deivert's motion for a change in custody at this time, but the record does not contain such a denial until the court's order of January 26, 1978. That order followed two days of testimony on the visitation and custody issues, and the receipt of deposition and interrogatory evidence. In its January 1978 order, the court set out a visitation schedule conditioned on payment of child support.

Throughout 1978 the parties continued to litigate the visitation and child support issues. Finally, they agreed to a stipulation in early 1979 that reduced Deivert's child support obligation and stated that visitation was occurring regularly. Deivert contends that Oseira again began to thwart his attempts at visitation and also put pressure on him to pay child support he could not afford at the time. This is the only explanation offered for the next event in this drama: Deivert's stipulation on April 16, 1979, to a relinquishment of visitation rights in exchange for a release from child support payments, except for payments on the arrearages. The stipulation was signed by the attorneys for both parties and the guardian ad litem and was approved by Superior Court Judge Blair.

Deivert continued to see his children in public places, and Oseira's attempt to have this found a violation of the stipulation was rejected by the court. Thereafter, Deivert contends Oseira restricted the children's activities to prevent any contact with Deivert. For this reason, and because of a belief that Oseira was planning to move to another country, Deivert moved on September 6, 1979, for a change in custody and for visitation pending the court's decision on custody. Deivert also sought appointment of a guardian ad litem, as the court had previously relieved the public defender agency from this appointment. Deivert calendared his motions for a one day hearing.

Before any hearing was held, Judge Blair issued an opinion and order denying all of Deivert's motions. The court's decision rests on Deivert's waiver of visitation and on an asserted need for finality in custody disputes. The court noted its refusal to consider the motions, and stated that previous court orders were "final orders" from which no appeal was taken. Judge Blair refused to consider further requests for modification in the absence of a showing of child abuse by Oseira.

I

Our past decisions establish that this court will only reverse a trial court's decision to deny a change in custody if it abuses the substantial discretion it possesses in such matters, or if it makes clearly erroneous findings. *Nichols v. Nichols*, 516 P.2d 732 (Alaska 1973); *Sheridan v. Sheridan*, 466 P.2d 821, 824 (Alaska 1970). Abuse of discretion can be established by showing that the court considered improper factors in making its determination, that it failed to consider statutorily-mandated factors, or that too much weight was assigned to some factors. *See Nichols; Lacy v. Lacy*, 553 P.2d 928 (1976); *Horton v. Horton*, 519 P.2d 1131 (Alaska 1974).

In the case of requests to a court to modify custody, an additional requirement of a showing of a substantial change of circumstances since the previous determination has traditionally been applied. We explained this requirement in *King v. King*, 477 P.2d 356 (Alaska 1970), as follows:

Certainly a court should not alter a previous custody determination without a rea-

sonable basis for concluding that the best interests of the child dictate such a change. Without some change in circumstance there is no logical basis for a court to alter a determination which has once seriously and finally been made. To do so might well constitute an abuse of discretion. However, as we noted at the outset, both statute and decision make it clear that the paramount consideration is the best interest of the child. The concept of "substantial change" of circumstances is not a limitation on the discretion of the trial court to determine custody according to the best interest of the child. Rather, it may be considered simply a rule of judicial economy designed to discourage discontented parents from continually renewing custody proceedings.

In short, the "substantial change" of circumstances is not an initial obstacle which must be overcome by either party in order to have the court redetermine custody. It is simply one of the factors to be weighed in the balance by the court when a motion for modification of a divorce decree in respect to custody is made.

*Id.* at 359–60. In *Nichols* we followed *King* in a situation where the court modified the custody arrangement. We reversed the trial court there for failure to give adequate weight to the prior custody determination, saying, "Children should not be shuttled back and forth between divorced parents unless there are important circumstances justifying such change as in their best interests and welfare." 516 P.2d at 735.

■ We continue to adhere to these views, but we believe that they do not allow a court to refuse any consideration to a motion for modification. Our decision in *Leighton v. Leighton,* 596 P.2d 8 (Alaska 1979), required such consideration despite the equally long history of custody litigation in that case. Similarly in *Sherry v. Sherry,* 622 P.2d 960, 965 (Alaska 1981), we held that it was an abuse of discretion for a

trial court to order that no motion to modify custody could be made for a period of two years absent a showing of an extraordinary reason for the motion. We stated: "[I]t is impossible to tell what new circumstances may arise that might require modification. A parent should have recourse to the court to apprise the court of circumstances he or she thinks may warrant modification." *Id.* Courts would be remiss in their duty to do justice between the parties before them if they allowed frustration over inability to finally resolve a family law dispute to overcome the need for reasoned consideration of matters asserted in good faith.

■ However, we do not hold that a trial court must hold an evidentiary hearing on a motion to modify custody upon all requests to do so. While judges may not abdicate their judicial responsibilities, they also must be given some power to resolve child custody litigation. No purpose would be served in requiring a "substantial change of circumstances" before custody modification if a full hearing must be held on motions that do not contain a prima facie showing of either a change that warrants reexamination of the question, or that the best interests of the children would be served by a change of custody. Thus while a trial court must consider all motions for a change in custody, it is not required to grant a hearing on the motion if it is plain that the facts alleged in the moving papers, even if established, would not warrant a change.[1]

■ In the present case, the superior court did not consider Deivert's motion. While its opinion does give reasons for denying a change in custody, it does not address the arguments made in the motion. We therefore remand for such consideration, as set forth above.

## II

While this disposition moots Deivert's contentions as to the merits of the lower court's order, the remaining issues discussed below will undoubtedly arise on remand and are therefore addressed here.

---

1. To the extent *Leighton v. Leighton,* 596 P.2d 8 (Alaska 1979), indicates the need for an evidentiary hearing upon request, we disapprove of that holding.

 Deivert seeks reconsideration of the visitation issue despite his previous formal waiver of visitation rights. As mentioned, the lower court refused to reopen this matter, calling its previous orders "final," and noting no appeal had been taken. We reject the court's reliance on the finality of its previous orders. AS 09.55.205 gives the court power to make custody or visitation orders "at any time . . . during the minority of any child of the marriage" and to modify or vacate such orders at any time. The court's function in these matters is not merely to give the litigants their day in court but to serve the best interests of children throughout their minority, and this consideration augurs against strict finality.[2]

AS 09.55.205 sets forth factors to be considered in determining the best interests of a child, and Deivert admits that his previous waiver could be considered by the court under the statutory standard. We agree, and the court on remand will need to weigh all the factors in making its decision. The lower court was understandably reluctant to allow relitigation of the visitation question only five months after appellant waived his visitation rights. As discussed above, the court has discretion to deny a hearing where no showing has been made of changed circumstances or of an alteration in the best interests of the children.

### III

Deivert also argues that on remand we should require that the case be assigned to a different judge, invoking AS 22.20.-020(a)(6), which provides for the disqualification of a judge who cannot give a "fair and impartial decision." This argument is premature. Deivert has not sought the removal of Judge Blair in the superior court prior to his contention here. He may pursue this question on remand.[3]

2. Oseira's attempt to apply commercial cases defining waiver to prevent reconsideration of visitation are likewise unconvincing, as these cases lack the unique context of family law.

3. We have previously left open the question of whether the peremptory disqualification statute, AS 22.20.022, is available in a modification proceeding, since such a proceeding can be

### IV

Deivert also argues that the court erred in failing to appoint a guardian ad litem at his request. In accord with the legislative statement on the question contained in AS 09.65.130, this court has given trial courts discretion in deciding whether to appoint a representative for the children. *Veazey v. Veazey,* 560 P.2d 382 (Alaska 1977); *Lacy v. Lacy,* 553 P.2d 928 (Alaska 1976); *Carle v. Carle,* 503 P.2d 1050 (Alaska 1972). However, since we last spoke on the question the legislature acted to restrict that discretion "by requiring as a condition of appointment that the court find that the best interests of the child need articulation." Chapter 63, § 30, SLA 1977. AS 09.65.130 was amended to add subsection (c) detailing the requirements for appointment, the duties, and the duration of appointment of a guardian. The amended statute also requires the court to make a finding on the record before trial on the question of whether the child's best interest need representation. Subsection (a) was amended to delete the reference to a guardian ad litem, and to thus provide only for the appointment of an attorney to give legal representation to the child. On remand the court will need to consider the request for the appointment of a guardian in light of this amendment.

The order of the superior court is REVERSED, and the case is REMANDED for further consideration in light of this opinion.

COMPTON, J., not participating.

viewed as a continuation of the initial case. *Nichols v. Nichols,* 516 P.2d 732, 735 n.7 (Alaska 1973). *Cf. Veazey v. Veazey,* 560 P.2d 382 (Alaska 1977) (allowing disqualification under Civil Rule 42(c), without discussion of question raised in *Nichols,* where guardian ad litem entered case).