Samuel Myrl GASTON, Appellant,

v.

Susan Towle Hanson GASTON, Appellee.

No. S–8057.

Supreme Court of Alaska.

Feb. 20, 1998.

William T. Ford, Anchorage, for Appellant.

Peggy A. Roston, Anchorage, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

This appeal concerns a dispute between Samuel and Susan Gaston over child visitation privileges. The Gastons signed a custody agreement that allowed them to change the physical custody arrangement after one year. The custody agreement also provided that if the Gastons disagreed on proposed changes, they could seek mediation or court modification. Nine months after they signed the agreement, the Gastons adopted a slightly modified visitation schedule. Approximately one year later, Susan decided that the new arrangement was not in the children's best interests and informed Samuel that she wanted to return to the original schedule. Because Samuel wanted to retain the new visitation schedule, he filed a motion in the superior court requesting mediation or court modification, as provided for in the custody agreement. The superior court denied Samuel's request, ruling in part that the agreement's mediation provision had lapsed. Because we conclude that Susan was estopped from arguing that the provision had lapsed, we reverse.

## II. FACTS AND PROCEEDINGS

Samuel and Susan Gaston married in March 1985 and divorced in October 1994. Prior to the entry of their divorce, the Gastons signed a child custody agreement that determined the custody of their two children, James, born in April 1989, and Charlotte, born in June 1986.

Pursuant to the agreement, Samuel and Susan had joint and shared legal custody of the children. Although Susan received primary physical custody of James and Charlotte, the visitation schedule provided that the children would spend alternating weekends, from Friday evening to Sunday evening, with Samuel. In addition, James and Charlotte were to spend one overnight during the week with Samuel when they did not spend the previous weekend with him. The agreement did not specifically provide for summer visitation with Samuel, nor did it grant Samuel the right of first refusal on child care.

Section 2 of the agreement granted the parents the opportunity to revise the physical custody arrangement at the end of one year. Section 2 provides in relevant part:

> The parties agree to meet at the end of one year from the date of this Agreement to determine if the physical custody arrangement set forth below is still in the best interests of the children. *If the parties cannot agree, then either party may seek mediation or file a motion in court seeking modification.* If no action is taken by neither [sic] party, then the below schedule will remain in effect.

(Emphasis added.) The divorce decree incorporated the custody agreement by reference.

In July 1995, nine months after the custody agreement was signed, Susan agreed to extend the children's visits on the weekends until Monday morning. The parties disagree on whether they intended this modification to be permanent. In any case, the Sunday overnights continued from July 1995 until the late spring or summer of 1996,[1] when Susan informed Samuel that she wanted to return to the original schedule. Samuel objected, and the parties could not resolve this issue themselves.

Because Susan sought to return to the original visitation schedule over his objection, Samuel invoked the dispute resolution provision of Section 2 and filed a motion in superior court requesting mediation or modification of the agreement. In his motion, Samuel primarily sought to maintain the Sunday overnight visitation schedule.[2] Samuel implied in the affidavit supporting his motion that he had not sought mediation or modification of the agreement in October 1995, as provided in Section 2, because he felt that the parties had modified the agreement themselves by adopting the new visitation schedule.

Susan opposed Samuel's motion, arguing that neither mediation nor court modification was proper under the circumstances. Susan first argued that the court should deny Samuel's motion for modification because he had failed to meet his threshold burden of showing a change in circumstances. Next, Susan contended that Samuel's right to mediate pursuant to Section 2 had expired. She claimed that the right to mediate vested only if the parties were unable to agree on how to modify the visitation schedule at the October 1995 meeting. Susan argued that because the parties had not met in October 1995, the condition precedent to invoking the right to mediate had not occurred. In addition, she claimed that she had never agreed to modify the original agreement and had permitted the Sunday overnights on a trial basis only.

The superior court denied Samuel's motion. Concluding that the language of the agreement allowed the parties to seek mediation only within one year of its signing, or in October 1995, the court ruled that it would be inequitable to allow Samuel to compel Susan to mediate in August 1996, almost one year after the mediation provision had expired. The court also denied Samuel's request for modification of the custody ar-

---

1. The parties dispute the exact month that Susan informed Samuel that she no longer approved of the Sunday overnights.

2. Samuel also requested additional visitation during the summer and the right of first refusal on child care.

rangement, ruling that neither the adoption of the Sunday overnights on a trial basis nor the return to the original schedule constituted a material change in circumstances. Samuel appeals.

## III. DISCUSSION

### A. Standard of Review

Although we ordinarily review a superior court's decision regarding a motion to modify for an abuse of discretion, see Kessler v. Kessler, 827 P.2d 1119, 1119 (Alaska 1992), the dispute between the parties in this case stems from their differing interpretations of the child custody agreement they signed. As a result, we review the superior court's interpretation of the agreement as we would review its interpretation of any other contract, de novo. See Davis v. Dykman, 938 P.2d 1002, 1006 (Alaska 1997); see also Vachon v. Pugliese, 931 P.2d 371, 375 (Alaska 1996).

### B. Did the Trial Court Correctly Interpret the Custody Agreement?

Preliminarily, we note that the superior court correctly applied a contractual analysis in interpreting the custody agreement between Samuel and Susan. Settlement agreements should be interpreted as contracts provided that they meet minimal contractual requirements. See, e.g., Davis v. Dykman, 938 P.2d 1002, 1006 (Alaska 1997); see also Singh v. State Farm Mut. Auto. Ins. Co., 860 P.2d 1193, 1199 (Alaska 1993).

Samuel argues that he should now be able to invoke the dispute resolution clause of Section 2 because his failure to do so in

October 1995 stemmed from his reliance on Susan's agreement to the Sunday overnights. We agree.

The language of Section 2 suggests that the custody agreement was provisional and could be revised by the parents if either parent was dissatisfied with it at the end of one year. In addition, Section 2 provided that if the parents could not revise the agreement themselves, mediation or court modification would be available. In this case, Samuel and Susan agreed to try a new visitation schedule in July, thus making it unnecessary for either parent to seek mediation or court involvement in October.[3]

Relying on Susan's agreement to the Sunday overnights, Samuel did not exercise his option to seek mediation or court modification in October 1995. Because Samuel reasonably relied on Susan's representation to his detriment, Susan is now estopped as a matter of law from relying on the one-year time limit as a basis for refusing to abide by the dispute resolution provision.[4] See K.E. v. J.W., 899 P.2d 133, 134 (Alaska 1995) (setting out the elements of equitable estoppel as "(1) representation of a position by conduct or word, (2) reasonable reliance thereon by another party, and (3) resulting prejudice"). We therefore conclude that the superior court erred in denying Samuel's motion in its entirety.

Samuel requested mediation of his dispute with Susan or modification of the custody arrangement in his motion to the superior court. However, in the body of his motion and in his affidavit, Samuel expressed a preference for mediation.[5] Under the parties'

---

3. Even if Susan clearly informed Samuel of her desire to try the changed visitation schedule on an experimental basis only, Samuel could have reasonably concluded that the October 1995 deadline for requesting mediation or modification of custody would be extended for the duration of the experiment, in order to allow both parties to decide if the new schedule would be acceptable on a more permanent basis.

4. Alaska's family law encourages custodial parents to be flexible in experimenting with visitation schedules, and in most cases parents should feel free to end such experiments if they conclude that they are not working. See Garding v. Garding, 767 P.2d 183, 185 (Alaska 1989) (stating that in codifying the change in circumstances doc-

trine, the state legislature "expressly found 'that it is in the best interests of a child to encourage parents to implement their own child care agreements outside of the court setting.'") (quoting Ch. 88, § 1(b) SLA 1982). Our decision in this case that Susan should not be able to revoke her agreement to a change in the visitation schedule without entering mediation is based on the unique language of the custody agreement she and Samuel signed.

5. In his motion, Samuel wrote: "The parties' previous agreement called for the appointment of a mediator in the event of disagreement. This appears to be a good method to expedite[ ] resolution of this matter." Similarly, Samuel's affi-

agreement, if one party sought mediation the other was bound to mediate. Given the parties' agreement, the superior court should have ordered mediation.[6]

Further, we take this occasion to endorse broader use of mediation in child custody and visitation matters. Mediation offers parents multiple benefits. In general, "[i]nstead of pitting one parent against the other" in the adversarial atmosphere of the courtroom, mediation encourages parents "to solve their mutual problem, which is how to optimize the time their children share with each of them." Donald T. Saposnek, *Mediating Child Custody Disputes* 19 (1983). In particular, mediation expands the variety of possible resolutions to custody disputes because the parents are free to agree to more creative arrangements than those that might be adopted by a trial court. *See id.* Additionally, one commentator has pointed out that parents' satisfaction with the mediation process leads to what he terms a low rate of "recidivism": in one program "fewer than 10% of mediated cases were officially reopened within the first year after mediation." *See* Jeff Atkinson, *Modern Child Custody Practice* § 2.03, at 50 (1986) (footnote omitted).

Most importantly, resolving custody and visitation disputes through mediation rather than through an adversarial process benefits the children who are the subject of disputes between their parents.

> [These] benefits include [fostering] increased chances for continued cooperation and communication between the parents, reduction of ongoing conflict as a result of both parents perceiving themselves to be on the same side, and an attitude of mutual flexibility in problem solving.

Saposnek, *supra*, at 19. By increasing the potential for cooperation between parents, mediation decreases the potential for continuing parental strife in a child's life.

## IV. CONCLUSION

We REVERSE and REMAND to the superior court for an order requiring the parties to mediate the visitation issues raised in Samuel's motion for mediation/modification.[7]

---

davit states: "Inasmuch as our original custody agreement provided for the appointment of a mediator, I believe that this should be done by the court at the earliest possible time...."

**6.** Due to our decision that Samuel's request for mediation should have been granted, we need not consider whether the trial court could have modified the agreement absent a change in circumstances given Section 2's implication that the agreement was provisional.

**7.** Although Susan and Samuel did not discuss summer visitation or the right of first refusal on child care in July 1995, we conclude that these issues would also be appropriately addressed in mediation. Samuel could have reasonably concluded that he and Susan would resolve these other issues cooperatively, as they had the Sunday visitation issue, thereby rendering resort to the agreement's formal procedures unnecessary.