Paul Thomas MORINO, Appellant,

v.

Anne Elizabeth SWAYMAN, Appellee.

No. S–8331.

Supreme Court of Alaska.

Jan. 15, 1999.

William T. Ford, Anchorage, for Appellant.

Steven Pradell, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

*OPINION*

MATTHEWS, Chief Justice.

## I. *INTRODUCTION*

Paul Morino filed a motion in superior court to modify a court-approved visitation schedule to allow him an additional overnight visitation per week with his children. He appeals the superior court's denial of his motion and its award of $1,370 in attorney's fees to Anne Swayman, the children's mother. The court denied Morino's motion without a hearing, ruling that Morino had failed to demonstrate a substantial change in circumstances. It also awarded Swayman her actual attorney's fees because Morino's financial resources were greater than Swayman's and because the court found that his motion was not filed in good faith. We conclude that the court should have held a hearing on Morino's motion to modify.

## II. *FACTS AND PROCEEDINGS*

Paul Morino and Anne Swayman were divorced on February 12, 1996. They have two young children of the marriage.

During the divorce proceedings, Morino and Swayman signed a "Custody, Visitation, and Child Support Agreement." The agreement provided that Swayman would have sole legal custody of both children. Morino would have two consecutive overnight visita-tions per week, one three-hour evening visitation mid-week, and summer and holiday visitation. The agreement also provided that beginning on September 1, 1999, the parties would change the visitation to a 50/50 visitation schedule by which they would rotate custody on a weekly basis. The superior court incorporated the agreement into the divorce order, finding that the custody and visitation agreement was in the best interests of the children.

On July 25, 1997, Morino filed a motion to modify visitation to allow him three consecutive overnight visitations per week, and also filed an accompanying motion requesting a hearing. He affied that from September 1996 until late June 1997, he had visitation with the children for three overnights per week pursuant to an informal agreement with Swayman. He also affied that in early June, he had asked Swayman to sign a stipulation to formally change the visitation schedule to reflect the actual visitation. Approximately two weeks later, however, Swayman informed him that she would not agree to the modification, and would instead return to the original visitation schedule because she felt the modification was not in the children's best interests.

Morino argued that the parties' informal agreement to modify the visitation schedule and the ten-month period when the visitation had actually changed was a substantial change in circumstances and that it was in the best interests of the children to continue with the modified schedule. Swayman opposed the motion, arguing that she had merely tried to accommodate extra visitation, but had not agreed to a formal modification of the visitation order. She argued that Morino had failed to demonstrate a substantial change in circumstances entitling him to an evidentiary hearing and increased visitation would not be in the children's best interests.

The superior court denied Morino's motions without a hearing, holding that Morino failed to show a change in circumstances. It also denied Morino's motion for reconsideration, emphasizing that an informal accommodation in visitation is not a changed circumstance, because such a result would

discourage custodial parents from allowing favorable deviations from visitation agreements.

Swayman then moved for actual attorney's fees under AS 25.20.115. The court awarded her $1,370 in actual attorney's fees, finding that Morino's relative financial resources were clearly greater than Swayman's and that Morino's motion was "vexatious and not in good faith."

Morino appeals the superior court's denial of his motion to modify visitation, as well as the award of actual attorney's fees to Swayman.

## III. *DISCUSSION*

*The Superior Court Should Have Conducted a Hearing Because Morino Alleged Facts Which Could Have Justified a Modification*

■ Reasoning that Morino had failed to demonstrate a substantial change in circumstances, the superior court denied Morino's motion to modify visitation and denied his motion for a hearing. Morino argues that the court erred in failing to hold an evidentiary hearing because the agreement with Swayman to modify the visitation schedule constituted a substantial change in circumstances.

■ A trial court may modify a visitation award if it determines that "a change in circumstances requires the modification of the award and the modification is in the best interests of the child." AS 25.20.110(a). The parent moving for modification has the burden of proving a substantial change in circumstances as a threshold matter. *See Long v. Long,* 816 P.2d 145, 150 (Alaska 1991). The change in circumstances required to modify visitation, though, is not as great as that required for a change in custody. *See Carter v. Brodrick,* 816 P.2d 202, 204 (Alaska 1991).

■ A movant who demonstrates a change in circumstances is entitled to an evidentiary hearing to determine whether the modified visitation would be in the child's best interests. *See A.H. v. W.P.,* 896 P.2d 240, 244 (Alaska 1995). However, a trial court is not required to grant a hearing on a modification motion if it is "plain that the facts alleged in the moving papers, even if established, would not warrant a change." *Deivert v. Oseira,* 628 P.2d 575, 578 (Alaska 1981). We recently clarified that the question of whether the moving party has met its burden of demonstrating a change in circumstances so as to be entitled to an evidentiary hearing is a matter of law which we review de novo. *See C.R.B. v. C.C.,* 959 P.2d 375, 378 (Alaska 1998). Thus if a trial court denies a motion to modify visitation without a hearing, "[w]e will affirm if, in our independent judgment, the facts alleged, even if proved, cannot warrant modification, or if the allegations are so general or conclusory, and so convincingly refuted by competent evidence, as to create no genuine issue of material fact requiring a hearing." *Id.*

Because the superior court denied Morino's motion to modify visitation without a hearing, the issue is whether Morino alleged facts that, taken as true, could warrant modification. Morino presented the following in support of his motion. He affied that beginning in September of 1996 Swayman consented to his keeping the children overnight on his mid-week visitation instead of just visiting with them for three hours pursuant to the visitation order. Morino also affied that he subsequently began keeping the children for three consecutive overnights, which replaced his mid-week visitation. Swayman agreed to this change in a letter to Morino. She wrote:

> Starting Thursday, February 6, 1997, you'll have the kiddos from 6:00 p.m. until Sunday at 12:00 p.m. This will give us the same schedule with them without breaking up their routine as much.

Morino argued that it was in the best interest of the children to continue with this schedule, that the children benefitted from the increased time which they spent with him, that the informal agreement to the schedule "demonstrates that such a scheme meets the children's mental, emotional and social needs," and that the schedule "is easier on the children because it involves fewer change-overs." In response to Swayman's opposition, Morino contended that since the new visitation arrangement had been in place

since September of 1996 another change would be destabilizing and contrary to the children's best interests. Further he contended that the children while in his custody were nurtured in a placid and stable home life while, by contrast, in Swayman's household they were exposed to considerable domestic strife.

Morino argues that the informal agreement and de facto change in the visitation schedule constitute a substantial change in circumstances which entitles him to an evidentiary hearing. It is uncontested that the parties informally agreed to modify the visitation schedule. For a ten-month period the informal agreement effectively substituted one additional overnight visitation per week for Morino's three-hour mid-week visitation. The original visitation schedule had only been in effect for seven months before this change in visitation. Arguably, this substitution could be regarded as a substantial change from the original visitation schedule.

■ Custodial parents should have the flexibility to experiment with new visitation schedules without fearing that every temporary change could be the basis for modifying visitation. *See Gaston v. Gaston*, 954 P.2d 572, 574 n. 4 (Alaska 1998) ("Alaska's family law encourages custodial parents to be flexible in experimenting with visitation schedules, and in most cases parents should feel free to end such experiments if they conclude that they are not working."). As noted by the superior court, if temporary variations in visitation schedules always constituted a substantial change in circumstances, primary custodians would be discouraged from allowing any favorable deviation from the visitation order.

■ Nonetheless, at some point, informal or de facto modifications of custodial or visitation arrangements should be formalized. Child support amounts and the number of visitation days allotted to the non-custodial parent are interdependent under Civil Rule 90.3(a) and (b). A premise of the rule is that it is in the best interests of the children that child support amounts bear a prescribed relationship to the time the children spend with each parent. But this can only be accomplished where the decree reflects actual practice. Thus, justice is best served if the child support amount reflects the actual responsibilities and burdens of the parties.[1]

■ A de facto change with respect to the custody of a child may be a change of circumstances for the purpose of changing a custodial decree.[2] It follows that a de facto change with respect to visitation of a child may be a change of circumstances for the purpose of modifying decreed visitation. Of course, experimental changes lasting only a few months should not qualify as a change in circumstances. Just as surely, de facto changes of a lengthy duration, especially when they are such as to change child support payments when given de jure status, should qualify.

It is a fair question whether the interests of flexibility and experimentation are outweighed by the interest in formalizing a de facto change in this case. We are unable to say as required by *Deivert* that it is "plain that the facts alleged . . . would not warrant a change." 628 P.2d at 578. Nor can we say, to use the terms of *C.R.B.*, that "the facts alleged . . . cannot warrant modification." 959 P.2d at 378. Instead, we have what appears to be a case where the facts as alleged may or may not warrant modification.[3] An exercise of the trial court's judg-

1. *See Turinsky v. Long,* 910 P.2d 590, 595 (Alaska 1996):

> Child support awards should be based on a custody and visitation order. If the parties do not follow the custody order, they should ask the court to enforce the custody order or should move to modify the child support order. *Cf. Karpuleon v. Karpuleon,* 881 P.2d 318, 320 (Alaska 1994) (burden is on parents to apply promptly for modification when a child changes residency).

2. *See Boone v. Boone,* 960 P.2d 579, 582 (Alaska 1998) (children's change in residence for a peri-

od of ten months a material change in circumstances even though former custodial parent argued that it was a "temporary, and voluntary, physical custody arrangement which was never ordered by the court").

3. As previously noted, the substantive requirements for a modification are findings of a substantial change of circumstances and that modification is in the best interest of the children. *Supra* at 428. Our conclusion that Morino made

ment is required. That judgment should be exercised by a fully informed trial court judge after the parties have an opportunity to make their presentations at an evidentiary hearing.

Our disposition in this case concerning the need for a hearing on Morino's motion for modification requires that the court's award of attorney's fees be vacated.

## IV. CONCLUSION

For the reasons stated, the orders denying Morino's motion to modify and granting an award of attorney's fees to Swayman are VACATED and this case is REMANDED for further proceedings consistent with this opinion.

FABE, Justice, with whom BRYNER, Justice, joins, dissenting.

FABE, Justice, with whom BRYNER, Justice joins, dissenting.

## I. INTRODUCTION

I disagree with the court's conclusion that Paul Morino alleged facts sufficient to require a modification hearing. Our decision in *Gaston v. Gaston*[1] clearly suggests that a minor visitation change of one day per week, in place for ten months, is *not* a substantial change of circumstances that would entitle a

movant to a hearing. Additionally, the court's ruling runs contrary to the goals of Alaska's family law by discouraging parties from amicably resolving disputes through experimentation with informal visitation agreements. For these reasons, I respectfully dissent.

## II. DISCUSSION

A. *Morino Did Not Allege a Substantial Change of Circumstances Sufficient to Justify a Modification Hearing.*

As the court points out, we should affirm the denial of a visitation modification hearing when "the facts alleged, even if proved, cannot warrant modification ... or ... are so general or conclusory ... as to create no genuine issue of material fact."[2] The court also acknowledges that a movant, in order to be entitled to such a hearing, must allege both a change in circumstances and that the change affects the best interests of the child.[3] Although I agree with this two-pronged test for entitlement to a hearing, I disagree with the court's ultimate conclusion that Morino demonstrated a substantial change of circumstances.

The change in circumstances that Morino alleges here is the experimental visitation arrangement itself.[4] In holding that such an

a prima facie case justifying a hearing thus necessarily applies to both requirements. As to the best interest requirement, the showing he made summarized above is sufficient. The duration of the informal modification implies that continuity and stability interests will be advanced. The modified schedule brings closer-to-equal contact with each parent and implies improved transitions now, as well as an easier transition to equal contact which will occur as agreed on September 1, 1999. The fact that Swayman agreed to the informal change implies that she thought initially that the changed schedule was at least not in conflict with the children's best interests.

1. 954 P.2d 572 (Alaska 1998).

2. Op. at 428 (quoting *C.R.B. v. C.C.*, 959 P.2d 375, 378 (Alaska 1998)).

3. Op. at 429 n. 3. The court's recognition of the "best interests of the child" requirement is not entirely consistent with its earlier statement that "[a] movant who demonstrates a change in cir-

cumstances is entitled to an evidentiary hearing to determine whether the modified visitation would be in the child's best interests." Op. at 428 (citing *A.H. v. W.P.*, 896 P.2d 240, 244 (Alaska 1995)). Our prior cases confirm that the determination of whether a change is "substantial" necessarily involves an inquiry into whether and how the change affects the best interests of the children. As we wrote in *C.R.B. v. C.C.*:

> When a parent moves to modify custody, the court must "consider" the motion, but *need not hold a hearing* if it is plain that the facts alleged in the moving papers, even if established, would not warrant a change. The moving parent *must show changes that affect the child's welfare*, reflect more than a mere passage of time, and overcome our deep reluctance to shuttle children back and forth between parents.

959 P.2d at 381 (emphases added) (citations omitted).

4. Morino argued in his motion for hearing that: The "change of circumstances" that has arisen here is the parties' *de facto* adoption of a

arrangement does constitute a substantial change of circumstances, the court reasons that, "at some point, informal or de facto modifications ... should be formalized." [5] But the court does not define this threshold, except to say that "experimental changes lasting only a few months should not qualify as a change in circumstances," whereas changes of a "lengthy duration, especially when they are such as to change child support payments when given de jure status, should qualify." [6] By using such language, the court implies that changes lasting for more than "a few months" should automatically be considered of sufficient duration to trigger a modification hearing. Such a standard would be undesirable for several reasons.

First, such a rule would be inconsistent with our recent opinion in *Gaston v. Gaston*.[7] In that case, the parents signed a custody agreement allowing them to change the arrangement after one year and providing for automatic mediation in case of disagreement.[8] Nine months into the agreement, the Gastons adopted an informal modified visitation schedule, much like the one in this case. When the mother wanted to end the arrangement one year later, the father disagreed and sought mediation. We upheld his right to mediation under the original agreement.[9]

In footnote 4 of *Gaston*, after describing the policy of Alaska's family law favoring out-of-court dispute resolution, we suggested that, but for the unique facts of the case, we would not have allowed the moving parent to come back into court:

> Alaska's family law encourages custodial parents to be flexible in experimenting with visitation schedules, and *in most cases* parents should feel free to end such experiments if they conclude that they are not working.... *Our decision in this*

*case that Susan should not be able to revoke her agreement to a change in the visitation schedule without entering mediation is based on the unique language of the custody agreement she and Samuel signed.*[10]

This language indicates our recognition that a one-year—and, by implication, a ten-month—de facto change in visitation that is minor in nature would *not* constitute a substantial change of circumstances sufficient to trigger a modification hearing. Although we did not have occasion in *Gaston* to reach the change of circumstances issue, the court today offers no reason for sending a conflicting message by setting the threshold duration at "a few months" rather than at least one year.

Second, the court conflates two different legal standards by stating that a material change sufficient to modify child support should also qualify as a substantial change sufficient to modify custody or visitation.[11] Whereas determination of a material change under Rule 90.3 calls for a straightforward assessment of changes in the parties' financial status or support burden, a determination of a substantial change for modifying custody or visitation requires a broader inquiry into social, physical, and emotional aspects of the change and their effect on the children's welfare. Although these standards may not be in tension in any given case, we should avoid creating a presumption that a significant change in either parent's financial obligations necessitates revisiting the original visitation or custody order.

More fundamentally, the duration of an informal arrangement should not be the sole, or even the primary, factor in a court's decision to modify an original court order based on the existence of the arrangement. Of course, certain de facto changes in visitation or custody may be "substantial" and may

---

visitation schedule in September 1996 under which Paul has the children overnight at least three days each week. Such a move by the parties is certainly a significant change of circumstances.

**5.** Op. at 429.

**6.** Op. at 429.

**7.** 954 P.2d 572 (Alaska 1998).

**8.** *See* 954 P.2d at 572.

**9.** *See id.* at 575.

**10.** *Id.* at 574 n. 4 (emphases added).

**11.** *See* Op. at 429 ("[C]hanges of a lengthy duration, *especially when they are such as to change child support payments when given de jure status,* should qualify [as substantial].") (emphasis added).

justify modification. But when making such a determination, we should look not only to duration but also to such crucially relevant factors as the magnitude of any effect on the children and the nature and quality of the schedule change. Thus, whereas evidence of a minor experimental adjustment for ten months to a year (such as in this case and *Gaston*), without additional allegations, would *not* constitute a substantial change, a more significant shift, such as changing a child's residence during the school week, may be sufficient even if lasting for a few months, assuming the change was in the child's best interests.

B. *The Court's Ruling Will Discourage Amicable Out-of-Court Resolution of Visitation and Custody Disputes and Will Punish Parties for Agreeing to Compromise.*

By declaring that an informal visitation agreement of any more than a few months may trigger a hearing, the court sends a message to custodial parents that they may be dragged back into court if they choose to compromise.[12] In doing so, we risk encouraging unnecessary litigation and discouraging post-divorce cooperation between parents.

In codifying the change in circumstances doctrine, the Alaska legislature found that "it is in the best interests of a child to encourage parents to implement their own child care agreements outside of the court setting."[13] Children have a better chance of emerging intact from divorce if the parents are generous to each other with respect to visitation matters. As one commentator explains:

Research shows that children are the "innocent victims of family breakdown and the more intense the parental conflict following separation, the more likely that the children will be torn apart by a conflict of loyalties over their parents."[14]

As a result, we should avoid fashioning a rule that would discourage one parent from granting the other additional visitation out of fear that such a change could precipitate a modification hearing.

We also should not encourage unnecessary hearings in cases involving change of visitation or custody. Such hearings force the custodial parent to pay attorney's fees, call witnesses, and incur the expense of psychologists and other experts. Professor Janet Weinstein notes the counterproductive effect of unnecessary litigation on all parties:

Rather than teaching parents to communicate and collaborate effectively after divorce for the benefit of their children, [the adversarial system] builds higher walls.... Further, the process is disempowering, as it forces the parties to place their fates in the hands of their attorneys and the court. In the process, the family's resources are expended and depleted with no beneficial outcome for the child or the parents.[15]

The court's opinion acknowledges that Alaska's family law encourages out-of-court compromises and experiments with respect to visitation arrangements.[16] Nonetheless, the court argues that children's best interests are generally served by conforming child support payments to reflect "actual practice."[17] This observation is undeniably true, but it does not necessarily lead to the conclusion that the children's interests are best

12. *See, e.g., Jacobs v. Jacobs,* 102 Ohio App.3d 568, 657 N.E.2d 580, 587 (Ohio App.1995) (reversing referee's decision to modify visitation, preferring "to encourage the amicable resolution of parental disputes in visitation matters rather than penalize those who have made efforts to compromise").

13. Ch. 88, § 1(b) SLA 1982. *See also Garding v. Garding,* 767 P.2d 183, 185 (Alaska 1989).

14. Christy L. Hendricks, *The Trend Toward Mandatory Mediation in Custody and Visitation Disputes of Minor Children: An Overview,* 32 U.

Louisville J. Fam. L. 491, 495 (1994) (citation omitted).

15. Janet Weinstein, *And Never the Twain Shall Meet: The Best Interests of the Child and the Adversarial System,* 52 U. Miami L.Rev. 79, 133 (1997). *See also id.* at 124 ("Litigation costs drain resources which could otherwise be used for the children's needs.").

16. *See* Op. at 429 (quoting *Gaston,* 954 P.2d at 574 n. 4).

17. Op. at 429.

served by formalizing the de facto arrangement. For example, Morino's child support payments would just as much conform to reality if the court chose to follow the original order, which is exactly what Swayman attempted to do.

While it is important that trial judges give parties an opportunity to be heard before ruling on disputed custody matters when such parties make sufficient factual allegations,[18] this is not such a case. We also must be aware that, while allowing the adversarial process to continue unnecessarily after the court issues a custody order may be cathartic for the parents, it only hurts the child.

## III. *CONCLUSION*

Because Morino failed to allege a substantial change of circumstances, the superior court was correct in denying a modification

hearing. The majority's approach, which considers any de facto agreements of more than "a few months" to constitute a substantial change of circumstances, places undue emphasis on the duration of the arrangement and is in tension with our analysis in *Gaston*. Moreover, the court's ruling will discourage parents from being generous with each other in custody matters and, to that extent, runs counter to the goals of Alaska's family law and the needs of Alaska's children of divorce. For these reasons, I respectfully dissent.

---

**18.** *See, e.g., Acevedo v. Liberty,* 956 P.2d 455, 456–57 (Alaska 1998) (reversing lower court's denial of modification hearing because movant's relocation to another city constituted a substantial change of circumstances as a matter of law).