Billy C. SCHUYLER, f/k/a Billy Lemon, Appellant,

v.

Florence BRINER and State of Alaska, Department of Revenue, Child Support Enforcement Division, Appellees.

No. S–9460.

Supreme Court of Alaska.

Dec. 8, 2000.

---

Billy C. Schuyler, pro se, Clear, Appellant.

Mary–Ellen Zalewski, Anchorage, for Appellee Briner.

Mary A. Gilson, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee State of Alaska.

Before FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

### OPINION

FABE, Chief Justice.

## I. INTRODUCTION

When the Child Support Enforcement Division (CSED) moved to increase Bill Schuyler's child support obligation, Bill opposed the proposed increase, arguing that he had worked additional overtime for the sole purpose of supporting his new family. He also requested a decrease in his child support and moved for a modification of his daughter's legal custody. The superior court increased Bill's child support and denied his request for a change in custody without holding a hearing. Because the commentary to Alaska Civil Rule 90.3 specifically contemplates that the court may consider overtime or extra jobs taken for the express purpose of providing for a new family, we remand to the superior court for consideration of this defense to a motion to increase support payments. But because Bill did not allege the special circumstances that would entitle him to a support reduction, we affirm the superior court's decision denying him a downward modification of support. And because Bill failed to demonstrate that awarding him sole legal custody would be in his daughter's best interests, we affirm the superior court's decision to deny Bill's request for a custody modification without a hearing.

## II. FACTS AND PROCEEDINGS

Bill and Florence Lemon married in 1970 and had their daughter, Valerie, in 1983. Valerie was their only minor child at the time of divorce, but they had an older son, Billy Lemon, who is married and living in Anchorage.

Florence filed for divorce in September 1996. Bill answered, and the superior court entered a decree of divorce in June 1997. Pursuant to the Lemons' agreement, the court awarded sole legal and physical custody of Valerie to Florence, and awarded Bill visitation "as mutually agreed upon by the parties." The court also required Bill to pay $752.73 per month in child support pursuant to Civil Rule 90.3.

After Bill and Florence divorced, Bill met and married Candice Schuyler in 1998. Candice has two minor children living at home, Victoria and Sean, and one minor child in college, Kimberly. When Bill married Candice, he took her last name and is now known as Bill Schuyler. Florence is now known as Florence Briner.

In June 1999 Valerie decided that she wanted to live with her brother Billy and his wife in Anchorage. After discussing it with Billy and Valerie, Florence decided to allow Valerie to move in with them. Since June 1999, Valerie has spent most of her time with Billy and his wife in Anchorage, although Florence continues to keep "a close eye on things and stays in frequent contact with Valerie and Billy." Bill also supports Valerie's desire to live with her brother.

In addition, Florence has continued to assist Valerie financially and has passed Bill's child support payments on to Valerie's brother. For example, in June and July of 1999, Florence paid $200 for Valerie's driver's education training, $665 for her camps, $250 for volleyball fees, $476 for an airline ticket, plus additional money for clothing, shoes, photographs, and Valerie's SAT examination.

In September 1999 CSED moved for an upward modification of Bill's child support order based on its review of his income information. Bill opposed CSED's motion, cross-moved for a reduction in his child support payments, and moved for a custody modification.

In his motion to modify custody, Bill contended that Valerie's move into her brother's home constituted "a material change in circumstances and a violation of the parties' agreement." He requested a hearing to determine whether the court should modify

custody, substituting Bill as the sole legal custodian. Citing *Gallant v. Gallant*,[1] he argued that because Valerie was living with a third party, "[c]ustody should be modified and Florence should be ordered to pay 20 percent of her income to child support." Florence opposed Bill's cross-motion for custody modification.

Superior Court Judge Peter A. Michalski denied Bill's motion to modify legal custody of Valerie, concluding that he had "failed in his pleadings to establish a significant change of circumstances justifying a modification or that a modification would be in the minor child's best interest."

With regard to child support, Bill opposed the upward modification motion and cross-moved for a reduction in his support obligation. He argued that his support obligation should not be increased because his rise in income was solely attributable to overtime worked in an effort to provide for his new family. He alleged that he took the additional overtime because he is the only source of income for his new family and that his stepchildren have exceptional medical and educational needs. He also used these circumstances to support his argument that his support obligation should be reduced.

The court did not address Bill's argument regarding the needs of his new family and ordered him to pay $919 per month in child support, pursuant to CSED's request. In addition, the court ordered Florence to pay Valerie's brother $267 per month for Valerie's support, and to pass all of Bill's child support payments on to Billy as well. Bill appeals.

## III. STANDARD OF REVIEW

■ Bill appeals the superior court's order denying a hearing on his motion to modi-

fy custody. A court may deny such a motion "if it considers [the] motion and finds it plain that the facts alleged in the moving papers, even if established, would not warrant a change in custody."[2] We therefore review de novo a court's decision to deny a hearing on a motion to modify custody.[3] We will affirm if, in our independent judgment, "the facts alleged, even if proved, cannot warrant modification, or if the allegations are so general or conclusory, and so convincingly refuted by competent evidence, as to create no genuine issue of material fact requiring a hearing."[4]

■ Bill also appeals the superior court's upward modification of his support obligation. We review modification of child support orders for an abuse of discretion.[5] An abuse of discretion occurs when, based on a review of the whole record, "we are left with a definite and firm conviction that a mistake has been made."[6]

■ In addition, Bill appeals the superior court's order denying a hearing on his motion to reduce his support obligation. Whether Bill has made "a prima facie showing sufficient to justify a ... child support modification hearing is a matter of law that we review de novo."[7]

## IV. DISCUSSION

A. *The Superior Court Did Not Err in Denying Bill's Motion to Modify Custody Without Holding an Evidentiary Hearing.*

■ Bill argues that he established a prima facie case for a change in circumstances, requiring a hearing on his motion to modify custody. In his motion he essentially argued two things: first, that Valerie's move into her brother's home constitutes changed circum-

1. 882 P.2d 1252, 1257 (Alaska 1994) (requiring both parents to pay support to third-party custodian).

2. *C.R.B. v. C.C.*, 959 P.2d 375, 378 (Alaska 1998) (internal punctuation omitted). In addition, a court may deny a motion for custody modification "without holding a hearing, based solely on the pleadings or after considering material beyond the pleadings—e.g., affidavits." *Id.*

3. *See id.*

4. *Id.*

5. *See State, Dep't of Revenue, CSED v. Pealatere*, 996 P.2d 84, 86 (Alaska 2000).

6. *Id.* (quotation omitted).

7. *Harrington v. Jordan*, 984 P.2d 1, 3 (Alaska 1999).

stances that justify modifying legal custody; and second, that because of the change in circumstances, both Bill and Florence should have to pay child support.

■ We first address Bill's argument that Valerie's new living arrangement with her brother constitutes a change of circumstances that justifies awarding him sole legal custody of Valerie. We have stated that in order to warrant a hearing to modify custody, "a moving party must make a prima facie showing of a substantial change in circumstances affecting the children's welfare." [8] Because family law strives to create stability for children, courts should not encourage unnecessary hearings in custody cases,[9] and we will affirm the superior court's denial of a custody hearing when "it is plain that the facts alleged in the moving papers, even if established, would not warrant a change." [10]

We have recognized that in certain situations, a child's change in residence qualifies as a material change in circumstances.[11] Because Valerie has been living with her brother, Billy, since June 1999, we agree that there has been a change in circumstances. But Bill must also make a showing that this change in circumstances justifies a change in legal custody and that awarding him legal custody is in Valerie's best interests.[12]

Here, Bill has not demonstrated that Valerie's new living arrangement with her older brother necessitates a custody modification in order to serve her best interests. Both Florence and Bill agreed that Valerie should live with her brother, and that was also Valerie's articulated preference. Bill even stated in his affidavit that he "support[s] Valerie's desire to live with her brother and his wife." Because Bill has failed to establish that the change in circumstances justified a change in legal custody, the trial court did not err by denying the motion without a hearing.

■ In his motion to modify custody, Bill also argued that Florence should have forwarded the child support payments directly to Billy for Valerie's benefit. Yet the record indicates that Florence did pass Bill's child support payments on to Billy and that she made her own financial contributions to Valerie's care as well. Indeed, in response to Bill's motion, Florence volunteered to make her own support payments to Billy pursuant to Rule 90.3.

Florence therefore did not oppose Bill's second argument in his motion to modify: that both he and Florence should have to pay twenty percent of their incomes directly to Billy for child support. And the superior court ordered precisely that, by requiring Florence to forward all of Bill's support payments to Billy and requiring her to make monthly support payments of $267 to Billy. The superior court's order was appropriate in light of Rule 90.3's requirement that noncustodial parents pay support to third parties who have physical custody of their children.[13]

**8.** *Id.*

**9.** *See C.R.B. v. C.C.,* 959 P.2d 375, 379 (Alaska 1998) (CINA laws reflect "a legislative intent that permanent homes be found for the children so that they can have a stable family life.") (internal punctuation and quotations omitted).

**10.** *Morino v. Swayman,* 970 P.2d 426, 428 (Alaska 1999) (internal quotation omitted).

**11.** *See Boone v. Boone,* 960 P.2d 579, 581–82 (Alaska 1998) (holding that in the context of a modification of a child support order, children's temporary and voluntary change in residence for a period of 10 months was a material change in circumstances); *Bunn v. House,* 934 P.2d 753, 758 (Alaska 1997) (stating that a change in custodial or visitation patterns may constitute a material change in circumstances); *Karpuleon v. Karpuleon,* 881 P.2d 318, 320 (Alaska 1994) (stating

that a child's change in residence is a material change of circumstances).

**12.** *See* AS 25.20.110(a) ("An award of custody of a child ... may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child."); *C.R.B. v. C.C.,* 959 p.2d 375, 378 (Alaska 1998) ("The moving parent must show changes that affect the child's welfare ... reflect more than mere passage of time ... and overcome our deep reluctance to shuttle children back and forth between parents.") (internal citations omitted).

**13.** *See* Alaska R.Civ.P. 90.3(i)(1) ("When the state, or another third party entitled to child support, has custody of all children of a parent, the parent's support obligation to the third party is an amount equal to the adjusted annual income of the parent multiplied by the percentage

We therefore conclude that the superior court properly granted Bill's request that both he and Florence be required to pay child support pursuant to Rule 90.3, and neither party challenges that order.

B. *The Superior Court Should Have Considered Bill's Efforts to Provide for His New Family as a Defense to an Increase in His Support Obligation.*

1. *Bill properly raised a defense to the upward support modification.*

 In its November 1999 order for modification of child support, the superior court required Bill to pay $919 per month for Valerie's child support, up from $752.73 in 1997. This increased payment reflected CSED's more recent review of Bill's financial information pursuant to Rule 90.3.[14] Bill argues that he is entitled to a variance from the Rule 90.3 calculation because his increase in income is directly attributable to extra overtime worked for the sole purpose of providing for his stepchildren's special medical and educational needs. He contends that this additional income should not be considered in determining his support obligation for Valerie.

The commentary to Rule 90.3 provides that "the interests of the subsequent family may be taken into account as a defense to a modification action where an obligor proves he or she has ... increased his or her income specifically to better provide for a subsequent family."[15] But such a defense should not be allowed to the extent that the "in-crease in income is limited to ordinary salary increases," or to the extent that the increase in income is not expressly motivated by an attempt to care for the subsequent family.[16]

Bill argued that his increased income is due to additional overtime for which he has volunteered "only so he can provide" for the needs of his stepchildren. He stated in his affidavit, "[m]y increase in income is because I volunteer for all the overtime I can.... The reason for my volunteering for extra overtime is because my new family needs the money."

We conclude that the superior court should have considered Bill's defense to the upward modification when it determined whether to increase his support obligation.[17] Because the court failed to do so, we remand for a determination of whether Bill increased his income for the express purpose of providing for his new family, and whether CSED's request for an increase should be denied on that basis. In determining whether the interests of Bill's subsequent family should defeat the motion to increase child support, the superior court should also consider "the income, including the potential income, of both parents" of Bill's stepchildren, including that of the stepchildren's biological father.[18]

2. *The needs of Bill's new family do not justify a support reduction.*

 Bill also argued that the increased needs of his new family justified a reduction of the support obligation initially established

---

specified in subparagraph (a)(2)."); Alaska R.Civ.P. 90.3(a)(2)(A) ("The percentage by which the non-custodial parent's adjusted income must be multiplied in order to calculate the child support award is ... 20% (.20) for one child.").

14. The superior court granted CSED's motion for an upward modification of Bill's support obligation because his increased income amounted to a "material change of circumstances" under Rule 90.3(h)(1). That is, the new support amount as calculated under Rule 90.3 was more than 15 percent greater than Bill's previous support order; indeed, it was 22 percent greater.

15. Alaska R.Civ.P. 90.3 commentary VI.B.2.

16. *Id.*

17. CSED argues that an obligor parent may only raise this defense when the "subsequent family"

consists of biological or adopted children. In recognizing this defense to an upward modification motion, Rule 90.3 sanctions a parent's decision to take on additional work in order to care for subsequent biological or adopted children. We cannot conclude that the rule does not provide the same sanction to a parent's explicit efforts to provide for stepchildren. Because we see no reason to discourage a parent from taking on additional work for the specific purpose of caring for a new family—whether that family is biological, adopted, or otherwise—we need not address whether Rule 90.3 otherwise distinguishes between biological or adopted children and stepchildren.

18. Alaska R.Civ.P. 90.3 commentary VI.B.2.

in 1997. Although the commentary to Rule 90.3 provides that Bill's motivation for taking on additional overtime may provide a defense to an upward modification based on the increased income resulting from that overtime, it does not provide a basis for a reduction in child support.

██ Under Rule 90.3, the court may only vary the support obligation if the obligor parent establishes "first, that unusual circumstances exist and, second, that these unusual circumstances make application of the usual formula unjust." [19] In addition, Rule 90.3 only allows a support variance when the obligor parent demonstrates "good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied." [20] A trial court may deny a motion to modify child support without an evidentiary hearing if the moving party does not allege facts that would establish a prima facie case for modification. [21]

The commentary to Rule 90.3 states that in most instances, a subsequent family will *not* present good cause to vary the support guidelines:

> A parent with a support obligation may have other children living with him or her who were born or adopted after the support obligation arose. *The existence of such "subsequent" children, even if the obligor has a legal obligation to support these children, will not generally consti-*

*tute good cause to vary the guidelines.* However, the circumstances of a particular case involving subsequent children might constitute unusual circumstances justifying variation of support. The court should reduce child support if the failure to do so would cause *substantial hardship* to the "subsequent" children. [22]

Thus, the obligor parent must show that unusual circumstances exist such that the court's failure to vary the support obligation would result in "substantial hardship" or "manifest injustice." This is true even if the obligor parent has a legal obligation to support the subsequent children.

Although Bill maintained that his stepchildren suffer from health problems including asthma, Attention Deficit/ Hyperactivity Disorder (ADHD), and poor teeth, he has not demonstrated that failure to reduce his support obligation would result in substantial hardship. Instead, he merely asserted in his affidavit that "a reduction in my support for Valerie would help me care for my new family." [23] But Rule 90.3 requires more than such an assertion, for simply supporting a new family "will not generally constitute good cause to vary the guidelines." [24]

Bill failed to establish a prima facie case for a downward modification of his support obligation, and the superior court therefore did not err in denying his request for a hearing. [25]

19. Alaska R.Civ.P. 90.3 commentary VI.B.

20. *State, Dep't of Revenue, CSED v. Pealatere,* 996 P.2d 84, 87 (Alaska 2000) (quoting Alaska R.Civ.P. 90.3(c)(1)).

21. *See Acevedo v. Burley,* 944 P.2d 473, 475 (Alaska 1997).

22. Alaska R.Civ.P. 90.3 commentary VI.B.2. (emphasis added).

23. Bill presented no other "evidence" of unusual circumstances justifying a decrease in ordered support in his affidavit. The dissent's identification of other conclusory statements made by Bill is derived from Bill's arguments in his supporting memorandum, not his affidavit. And in his affidavit, Bill supplies the facts about his stepchildren's educational and medical needs in an effort to explain his "reason for volunteering for extra overtime" and to prevent an increase in child support based on that increase in income.

24. *Id.*

25. Because we conclude that Bill failed to allege facts which would justify a reduction in his support obligation, we need not address whether the needs of stepchildren—as opposed to biological or adopted children for whom the parent has a legal obligation to support—may ever present the unusual circumstances necessary to support a motion to decrease child support. *Compare Dewey v. Dewey,* 886 P.2d 623, 625 (Alaska 1994) (stepparents have no general duty to care for their stepchildren), *and Burgess v. Burgess,* 710 P.2d 417, 422 (Alaska 1985) ("[A] stepparent-stepchild relationship imposes no obligations and confers no benefits on either the stepparent or the child."), *with* AS 25.20.030 ("Each parent is bound to maintain the parent's children when poor and unable to work to maintain themselves."), *and* Alaska R.Civ.P. 90.3 (requiring child support from non-custodial parents).

## V. CONCLUSION

Because Bill failed to demonstrate a substantial change in circumstances affecting Valerie's welfare, we conclude that the superior court did not err in denying his request for a hearing on his motion to modify custody. With respect to Bill's defense to CSED's motion to increase support, we REMAND for consideration of Bill's defense that his increase in income is directly attributable to his efforts to provide for his new family. On remand, the superior court should also consider the income and potential income of the stepchildren's biological parents. In addition, because Bill failed to demonstrate that substantial hardship would result from denying his motion to decrease his support obligation, we conclude that the superior court did not err in denying his request for a hearing on that motion.

MATTHEWS, Justice, with whom CARPENETI, Justice, joins, concurring in part and dissenting in part.

The first part of this separate opinion argues that the commentary to Civil Rule 90.3 should not be construed like a rule or regulation. This point does not conflict with the majority opinion. The second part takes the position that the good cause evidentiary hearing on remand should encompass Bill's defense to CSED's motion to increase child support and Bill's cross-motion to decrease child support. In so far as the majority opinion excludes the cross-motion from the evidentiary hearing, I dissent.

### I.

CSED argued in this case that as a matter of law an obligor's support of stepchildren, and the needs of stepchildren, can not serve as a basis for a court-ordered variance from the formula provided in Civil Rule 90.3(a) for calculation of child support. It founded this argument not on the rule, which provides without limitation that support may be varied for good cause on a showing by clear and convincing evidence that manifest injustice would otherwise result, but on the commentary, specifically part VI.B.2, captioned "Subsequent Children" which provides:

A parent with a support obligation may have other children living with him or her *who were born or adopted after the support obligation arose.* The existence of such "subsequent" children, *even if the obligor has a legal obligation to support these children,* will not generally constitute good cause to vary the guidelines. However, the circumstances of a particular case involving subsequent children might constitute unusual circumstances justifying variation of support. The court should reduce child support if the failure to do so would cause substantial hardship to the "subsequent" children.

In addition, *the interests of the subsequent family may be taken into account* as a defense to a modification action where an obligor proves he or she has taken a second job or otherwise increased his or her income specifically to better provide for a subsequent family. This defense to an upward modification action should not be allowed to the extent that the prior support was set at a lower amount prior to the adoption of this rule, or to the extent that the obligor's increase in income is limited to ordinary salary increases.

In considering whether substantial hardship to "subsequent" children exists, or whether the existence of a subsequent family should defeat a motion to increase child support, the court should consider the income, including the potential income, of both parents of the "subsequent" children.

(Emphasis placed on language discussed below.)

Focusing on the "born or adopted after" language in the first paragraph, CSED argues that stepchildren can not be considered "subsequent children" within the terms of the commentary and their needs in no circumstances can amount to good cause for varying a formula-based award. But other language in the commentary seems inconsistent with this reading. The "even if" language of the second sentence of the first paragraph tells us that "subsequent children" may include children for whom the obligor has no legal support obligation. Stepchildren are the most typical members of this

class. And the second paragraph permits the needs of the "subsequent family" to be taken into account in certain circumstances. It is hard to think that this includes the new spouse and in-laws, but excludes stepchildren.

CSED does not mention the "even if" language. But CSED explains the second paragraph of the commentary by arguing that it can only be made consistent with the first paragraph if "the subsequent family" is construed to exclude stepchildren. Today's opinion rejects this argument, seeing "no reason to discourage a parent from taking on additional work for the specific purpose of caring for a new family" even where, as here, the children in the new family are stepchildren. Slip Op. at 743 n. 17. This is a practical, common sense conclusion and I agree with it. This conclusion also implicitly rejects one premise of CSED's argument which is that the commentary is to be construed like a rule or regulation.

The commentary is the product of the Child Support Guidelines Committee. It is published for "informational purposes to assist users of Rule 90.3" but it has "not been adopted or approved by the Supreme Court." [1] Although we have frequently relied on the commentary for guidance, we have also rejected it in some respects and permitted support calculations contrary to its methods. [2] It is a mistake to parse the language of the commentary as if it were a rule or a regulation or to apply the rules of statutory construction to it. Unlike rules or regulations, the commentary has not been written with an eye toward precise distinctions. For these reasons, it is ultimately unproductive to strive to determine the meaning of Rule 90.3 by attempting to resolve inconsistencies or ambiguities in the commentary.

## II.

The majority's conclusion that Bill may have a defense to CSED's efforts to increase his child support necessarily means that under appropriate circumstances good cause for varying formula child support may be based on an obligor's assumed responsibilities to stepchildren. But the majority limits the permissible scope of the variance in this case to a defense to the increase sought by CSED. Bill sought, in addition, a decrease in his current obligation. The majority concludes that no evidentiary hearing is needed on this claim because "Bill did not allege the special circumstances that would entitle him to a support reduction." Slip Op. at 740. I disagree with this conclusion.

Trial courts should grant evidentiary hearings on support modification motions where the movant alleges facts that, taken as true, could warrant modification. This is what we mean when we say that the movant has established a prima facie case. [3]

Here the majority opinion says that Bill has not met this standard because "he merely asserted in his affidavit that 'a reduction in my support for Valerie would help me care for my new family.'" Slip Op. at 744. But that is merely one of several conclusory allegations made by Bill in his moving papers. He also claimed that "extraordinary expenses incurred in caring" for his stepchildren made this case "one that falls squarely within the unusual circumstances of Civil Rule 90.3, as explained in the commentary." He also stated, "strict application of the rule would cause an undue hardship on defendant's subsequent family, and thus unusual circumstances exist which warrants a considerable reduction in defendant's child support obligation."

These are, of course, merely conclusory allegations and I mention them only because the majority opinion relies on one modestly stated conclusory allegation made by Bill to justify denying him a hearing. But conclusory allegations can not make a prima facie case. Instead, facts must be alleged which, if true, could warrant modification. [4] I believe Bill has met this standard.

---

**1.** Alaska R.Civ.P. 90.3 commentary I.A.

**2.** *See Eagley v. Eagley,* 849 P.2d 777 (Alaska 1993); *Bunn v. House,* 934 P.2d 753 (Alaska 1997), and cases there cited.

**3.** *See Acevedo v. Burley,* 944 P.2d 473, 475 (Alaska 1997); *see also Morino v. Swayman,* 970 P.2d 426, 428 (Alaska 1999).

**4.** *See Morino,* 970 P.2d at 428.

Bill has alleged (1) in some detail that his stepchildren have substantial and expensive medical and educational needs;[5] (2) that he is the sole means of support of the stepchildren[6]; and (3) that he has taken on additional work to increase his income in order to support the stepchildren but that the increase in his income is not sufficient to provide for their extraordinary needs.[7] Thus Bill presents underlying facts which if accepted as true could support a discretionary determination by the trial court that unusual circumstances exist requiring a variance in formula-mandated child support. For these reasons I believe that the inquiry on remand as to whether there is good cause to deviate from formula child support should pertain both to CSED's motion to increase support and Bill's cross-motion to decrease support.

R.M., Appellant,

v.

S.G., Appellee.

No. S–9163.

Supreme Court of Alaska.

Dec. 8, 2000.

5. In his affidavit, Bill states that his two youngest stepchildren suffer from significant medical conditions, including severe asthma, allergies, heart blockage, ADHD, ear blockages, and dental problems. Bill also alleges that both young stepchildren require special education, and that he and his wife must pay part of the cost of this as part of their home schooling arrangement. This affidavit was explicitly filed in support of both Bill's cross-motion for downward modification of support and his opposition to CSED's motion to increase support: "Both the opposition and cross-motion are supported by the memorandum of points and authorities filed herewith and the affidavit annexed hereto." Opposition to State's Motion to Modify Child Support and Cross Motion for Modification of Child Custody and for Order Requiring Plaintiff to Pay Child Support.

6. Affidavit, paragraphs 5 and 8.

7. Affidavit, paragraph 8.